JACOB PICKEL ET AL., Appellants, v. ST. LOUIS CHAMBER OF COMMERCE ASSOCIATION, Respondent.

April 5, 1881.

1. Where parties to a contract account together and strike a balance, and the debtor gives his written obligation to pay such balance, this settlement cannot be reopened except upon clear proof of fraud or mistake, or of an express understanding that certain matters were left open for future adjustment.

2. Where such an account is thus settled, the presumption is that all previous dealings between the parties relating to the subject-matter of the account are adjusted.

3. Where the plaintiff shows an accounting and a settlement of the account between the parties, the burden is cast upon the defendant of showing that it was agreed that certain matters were not adjusted in that settlement, or that through fraud or mistake those matters were not taken into account in the settlement.

Appeal from the St. Louis Circuit Court, Wickham, J. *Reversed and remanded.*

J. M. & C. H. Krum and C. F. Moulton, for the appellants.

Vernon W. Knapp and W. H. H. Russell, for the respondent.

Thompson, J., delivered the opinion of the court.

The plaintiffs bring a suit upon a promissory note made by the defendant and payable to the plaintiffs, for $5,000. No defence is made to the note, but the answer sets up, by way of counter-claim, that the plaintiffs are indebted to the defendant in the sum of $32,000, as liquidated damages for delays in completing the cut-stone work of the Chamber of Commerce building in St. Louis, under the terms of a contract which is made a part of the answer. The plaintiffs, replying to this answer and counter-claim, state that " the said work done by the plaintiffs under their said contract was finally completed on or about the last of December, 1875, and accepted by the defendant; that the defendant took possession of the main building on or about the 1st of August, 1875; that the plaintiffs and the defendant, after the completion of the entire work, accounted together in respect to all of said work, including the extra work and for changes and alterations in said building, including the delays and hindrances aforesaid, and upon such accounting a balance was ascertained and agreed upon as being then due from the defendant to the plaintiffs amounting to the sum of $5,000; for which sum, subsequently, on the twentieth day of June, 1876, defendant made the promissory note sued on in this case."

Under the statute (Rev. Stats., sect. 3545) this new matter set up in the plaintiffs' reply is to be deemed as controverted by the defendant as upon a direct denial or avoidance, without any further counter-pleading. It was, therefore, entitled to show anything in evidence against it, either by way of denial or avoidance, that it could have shown if it had pleaded it formally. It was entitled to show that there had been no mutual accounting and settlement between the parties as there stated; or, if there had been, that the account so stated ought to be reopened, by reason of fraud or mistake; or, that there was an express understanding that such accounting should not be a bar to the claim for damages for delay in the completion of the contract which was set up in the answer.

The parties, therefore, went to trial upon this as one of the issues in the case; and the evidence showed, without any dispute, that there had been a mutual accounting between the parties; that it was deliberately had after a delay of some three months after the completion of the work and its acceptance by the defendant; that it was not — like the ordinary cases in the books where stated accounts are in question — a case where the creditor has rendered an account and the debtor has failed to object to it, or passively acquiesced in it, but that it was a case where the debtor, through its architects, after deliberately going over the whole contract and the work done under it, stated to the creditors, these plaintiffs, an account covering the entire period and subject of the contract; that in this account the defendant charged against itself the amount agreed by the contract to be paid for the work, — $325,000, — together with additional sums due the plaintiffs under the terms of the contract, for alterations in the specifications, made, during the progress of the work, by the architects, and took credit for the sums of money which, under the contract, it had, from time to time, paid to the plaintiffs, and also for amounts which, under the terms of the contract, it was entitled to

claim as credits, for alterations made during the progress of the work, which had made the work less expensive to the plaintiffs. The evidence went further than this. It showed that complaints had frequently been made, on the part of the defendant, to the plaintiffs, of alleged delays in the progress of the work, contrary to the terms of the contract ; that the directors frequently canvassed this subject among themselves, and that, when they came to make this final settlement with the plaintiffs, no claim whatever was made for liquidated damages for such delays under the contract, nor was anything said upon the subject. The final account thus deliberately rendered by the defendant, showed that there was due from the defendant to the plaintiffs the sum of $36,061.85, and concluded with the following significant words : " In accordance *with the terms of the contract*, the final payment is due, upon the approval of the work by the Chamber of Commerce Association, and upon the payment of all bills for labor and material by the contractors. Respectfully submitted, Lee & Annan, architects. Approved : George Knapp, chairman Building Committee." In accordance with this final statement of account thus made by the defendant, the defendant paid to the plaintiffs in cash, $25,061.85 ; in paid-up shares of the capital stock of the defendant corporation, $6,000 ; and, having no more money, it gave for the balance the note sued on.

Almost the entire contest in the court below and in this court, related to the merits of this counter-claim. We shall not consider this question at all, for there is, at the very threshold of the case, a well-settled principle of law which excludes it from consideration entirely. That principle of law is this : That when parties, having mutual matters of account between them, growing out of a contract, deliberately account together and state a balance, and the party who, on such accounting, is found indebted to the other, pays the debt or gives a written obligation for its

payment, this settlement is so far conclusive between the parties that it cannot be reopened or gone into, either at law or in equity, except upon clear proof of fraud, or mistake, or of an express understanding that certain matters were left open for future adjustment.   *Knox* v. *Whalley*, 1 Esp. 159; *Bull* v. *Harris*, 31 Ill. 489; *Lee* v. *Reed*, 4 Dana, 111; *Hodges* v. *Hosford*, 17 Vt. 615; *Darlington* v. *Taylor*, 3 Grant Cas. 195; *Martin* v. *Beckwith*, 4 Wis. 220; *Gibson* v. *Hanna*, 12 Mo. 165; *Cogswell* v. *Whittlesey*, 1 Root, 384; *Sergeant* v. *Ewing*, 36 Pa. St. 156; *Nicholson* v. *Pelanne*, 14 La. An. 508.   And where such an account is thus settled, the presumption is that all previous dealings between the parties relating to the subject-matter of the account, are adjusted.   *Gibson* v. *Hanna*, 12 Mo. 165 (per Scott, J.); *Bourke* v. *James*, 4 Mich. 336; *Mills* v. *Geron*, 22 Ala. 669.

These rules are founded in plain justice and good sense. For the preventing of litigation, the law favors and upholds the settlement of differences between the parties; and when men deliberately meet together and go over the entire subject-matter of a contract, make what purports to be a final settlement of that contract, and pay and receive the money found due, or give and receive a written obligation in lieu of the money, the law considers that they mean something by so doing, and that what they mean is that every element entering into the contract, which might have been there settled, was settled, and that the settlement was intended to be a finality.   The law further considers that, in the absence of fraud, mutual mistake, or an express agreement that certain matters which might have entered into the settlement should be left open for future consideration, an attempt to reopen such a settlement and litigate antecedent matters which ought to have been, and might have been embraced in it, is unjust, vexatious, productive of fraud and perjury, and in every way contrary to sound policy.

We could cite no more apt case in vindication of these

principles than the one before us. Is there any room whatever to doubt that a settlement thus deliberately made, under the terms of which the defendant parted with over $25,000 in money and $11,000 in evidences of indebtedness, was intended to be final? If the Chamber of Commerce Association had not so intended it, would it have handed over to the plaintiffs this large amount of money and securities, when, under the very terms of the contract, it was entitled to keep the whole or a part of it? The very suggestion is absurd.

The evidence to sustain the allegation in the plaintiffs' reply of a mutual accounting and settlement, was conclusive, and there was no countervailing evidence, either in denial or avoidance. The plaintiffs were, therefore, under the well-settled principles of law above stated, entitled to an instruction against the defendant's counter-claim, and the court erred in refusing it. But had there been any evidence which would have warranted the court in refusing the non-suit, there would still have remained a fatal error in instructing the jury, as the court did, that the burden of proof of the intention of the defendant to waive its claim for damages rested upon the plaintiffs. The law, as above stated, is exactly the other way. When the plaintiffs showed, as they did, the account stated and the final settlement between them and the defendant, in which no mention of this had been made, the burden was cast upon the defendant to show that it did not thereby intend to waive its claim for damages; and this it could not do without showing an express understanding to the contrary, or, at least, that it had been precluded from making the claim through fraud or mistake.

The judgment is reversed and the cause remanded. All the judges concur.