St. Louis Gas-Light Company, Respondent, *v.* City of St. Louis, Appellant.

### October 11, 1881.

1. An answer which neither denies nor confesses, and avoids the statements of the petition, is bad on demurrer.

2. A pleading which sets up a claim which shows on its face that it is barred by the statute of limitations is bad on demurrer.

3. A party to a contract with another therein described as a corporation, is, in an action on the contract, estopped to deny the other's incorporation.

4. The St. Louis Gas-Light Company was authorized to charge against the city of St. Louis the tax imposed by the United States upon illuminating gas.

5. A settlement made by the city auditor with the gas company is, in the absence of fraud or mistake, conclusive as to the amount due by the city at the date of the settlement.

6. That the city auditor entered as charges against the city, upon his books, the bills of the gas company, is presumptive evidence that each bill was properly audited at the date of its entry.

7. The books of account of a municipal corporation, kept by the proper officer, are *prima facie* evidence of the facts therein stated, and are competent to charge the city.

8. Under the tripartite agreement of February 28, 1873, interest on the bills of the gas company against the city ran from the date when each bill became due.

9. To warrant a charge of compound interest, a contract to that effect, either express or implied, must be shown

10. An accounting between the two parties, and the striking of a balance, are not evidence in this case of a contract for compound interest on the interest included in the balance.

11. The question as to whether the charter of a corporation has expired by limitation of time can be adjudicated only in a direct proceeding by the state.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Reversed nisi.*

LEVERETT BELL, for the appellant : If the suit is founded on a cause of action connected in any way with a contract, a counter-claim arising out of any other contract between the same parties, though sounding in damages, may be set up. — *Transportation Co.* v. *Boggiano*, 52 Mo. 294 ; *McAdow* v. *Ross*, 53 Mo. 199 ; *Life Assn.* v. *Cravens*, 60 Mo. 388. The plaintiff is liable in damages for a breach of the contract embodied in the charter. The fact that the state created the contract does not exempt the Gas-Light Company from liability to the city for a breach of it. There is no provision in the charter excluding such liability. And although the charter is primarily a contract between the state and the corporators, and the company is answerable to the state for a failure on its part to observe its charter obligations, yet the charter is also, as to the provisions under consideration, a contract with the city, for a breach of which the company is answerable in damages to the party injured. — *Ketchum* v. *St. Louis*, 11 Otto, 306. The city is not liable for the tax imposed by the United States upon illuminating gas. — *Gas Co.* v. *Pittsburg*, 101 U. S. 219. Under the statute law of this state there must be a contract in writing to sustain a claim of interest upon interest. — Rev. Stats. 459, sect. 2728 ; *Stoner* v. *Evans*, 38 Mo. 461.

Glover & Shepley and Noble & Orrick, for the respondent : This accounting was agreed to be made by the contract itself, which provided for time and interest from a day fixed. It was made by the proper officers and entered on the books of the defendant. Having been made, and the defendant having enjoyed the benefit of the credit given, the amount thus ascertained was not open to inquiry on the trial on any ground asserted by defendant, but was conclusive, regardless of the original items of the bills. — *Moore* v. *McCullough*, 8 Mo. 402 ; *Kronenberger* v. *Binz*, 56 Mo. 121 ; *Cape Girardeau, etc., R. Co.* v. *Kimmel*, 58 Mo. 83 ; *Stenton* v. *Jerome*, 54 N. Y. 480 ; *Young* v. *Hill*, 6 Hun, 613. And the sum fixed was to bear interest as agreed. — *McClelland* v. *West*, 70 Pa. St. 187 ; *Lockwood* v. *Thom*, 18 N. Y. 285. The gas tax was included by authority of law as well as consent at the settlement. — 12 U. S. Stats. 463. The defendant, having enjoyed the benefit of the extension of time and dismissal of suits based on this agreement, will not now be heard to dispute the settlement. — *Taylor* v. *Zepp*, 14 Mo. 482 ; *Newman* v. *Hook*, 37 Mo. 207 ; *Bunce* v. *Beck*, 46 Mo. 333. The contract of 1873, in its seventh clause, by providing for dismissal of suits and at the same time promising to pay bills for gas furnished, cannot be held to mean those bills only not in suit, because it does not say so ; and the construction given by the parties at the time was to the contrary. — *St. Louis Gas-Light Co.* v. *St. Louis*, 46 Mo. 121 ; *Patterson* v. *Camden*, 25 Mo. 13. The charter of the plaintiff was a contract with the state of Missouri only, and not with the defendant, nor can the defendant base a claim for damages on it. — *St. Louis* v. *Gas-Light Co.*, 70 Mo. 69. The facts stated are not sufficient to constitute a cause of counter-claim, for it neither relates to the same transaction as the plaintiff's claim, nor is it based on a contract between plaintiff and defendant. — Rev. Stats. 604, sect. 3522. It is barred on its face by the statute of lim-

itations, and therefore subject to demurrer. — *Henoch* v. *Chaney*, 61 Mo. 129. The question of the existence of a corporation cannot be raised collaterally, even though the manner of incorporation is prescribed by the constitution. — *St. Louis* v. *Shields*, 62 Mo. 247; *Railroad Co.* v. *St. Louis*, 66 Mo. 228; *Smith* v. *Clark*, 54 Mo. 81; Cooley's Const. Lim. 254.

THOMPSON, J., delivered the opinion of the court.

This action is brought to recover the sum of $545,670.48, with interest thereon from the first day of March, 1873, which the plaintiff claims to be the amount due for lighting the city of St. Louis with illuminating gas, from November, 1866, to March, 1873. The petition states in substance that the contract under which this service was rendered by the plaintiff to the defendant was entered into between the plaintiff and the defendant on the ninth day of January, 1846; that under this contract, the terms of which it is not necessary to set out, a large indebtedness accrued from the defendant to the plaintiff for furnishing the city with gas from the thirtieth day of October, 1867, to the first day of November, 1869, and also for United States revenue tax thereon paid by the plaintiff, and which the plaintiff was entitled to charge against the defendant; that the defendant having refused to pay this indebtedness, suit was brought for the same in 1870, which suit was defended, so that the same was pending on the first day of March, 1873; that the plaintiff continued, under the provisions of said contract, to furnish to the defendant illuminating gas, for the purpose of lighting its streets, from the first day of November, 1866, until the first day of March, 1873, and to pay the revenue tax thereon to the United States; that on the amount due for the same, only a portion was paid, and that a large sum remained due, including the amount sued for, as already stated; that for the purpose, among other things, of settling said suit and other litigations then

pending between the plaintiff and the defendant, and of obtaining time for the payment of the amount thus due to the plaintiff, the defendant, on the tenth day of February, 1873, passed an ordinance embodying the terms of a contract between the plaintiff, the defendant, and the Laclede Gas-Light Company, which contract was, on the twenty-eighth day of February, 1873, formally executed by the proper officers of the said contracting parties, as provided for in the ordinance. This ordinance is known as the "tripartite ordinance," and the contract executed in pursuance of it is known as the "tripartite contract," and they will be hereafter so designated. They are both set out in full in the plaintiff's petition. They contain the following clause, which is the only one material to this suit: "And it is further agreed between the said city and the St. Louis Gas-Light Company, that the litigation between them shall cease; all suits pending between them are to be dismissed, and all causes of action between them to be considered as settled. And the bills of the St. Louis Gas-Light Company against the city, for gas heretofore furnished to the city under the contract of date January 9, A. D. 1846, with interest at the rate of six per centum per annum until paid, are to be and will be paid by the city as follows: The city is to have two years from and after the 1st of July, A. D. one thousand eight hundred and seventy-three, for such payment, but it may make payment of any parts thereof at any time within said two years, or may pay the amount then due thereon at any time within said two years in six per cent gold bonds of the city, at their current or market value. And this contract and agreement is a substitute for and in lieu of said contract of date January 9, A. D. 1846, between the city and the St. Louis Gas-Light Company, and which last-named contract is to be cancelled by the parties thereto, and each and both parties to be absolved therefrom." The petition then proceeds to state in substance that the plaintiff on its part has performed all the

conditions of this contract; that the defendant, by its proper officers, agreed with the plaintiff that the amount due the plaintiff from the defendant on account of the bills before rendered by the plaintiff under the contract of January 9, 1846, after allowing the defendant certain credits to which it was entitled, was the sum of $545,670.48, being an amount less than the plaintiff had previously claimed to be due; that thereupon the plaintiff, on the third day of May, 1873, dismissed the suit which it had brought against the defendant for a portion of this indebtedness, as already stated; and that by virtue of this contract of March 1, 1873, and of this ascertainment and agreement by the defendant of the amount so stipulated to be paid by the defendant under the terms of said contract, the defendant became liable to pay to the plaintiff the said sum of $545,670.48, with interest thereon from the first day of March, 1873, at the rate of six per cent per annum, for which judgment is asked.

The answer contains five counts. The first is a general denial; the other four were demurred to by the plaintiff, and the demurrer sustained. The defendant thereupon dismissed the second and fourth counts, and took a non-suit as to the third and fifth, which latter embrace counter-claims.

A question is made whether the defendant, after having voluntarily dismissed and taken a non-suit as to the defences thus set up, is in a position to invoke the judgment of this court upon the action of the court below in sustaining the demurrer. We do not deem it necessary to consider this question, because, in the view we take, the action of the circuit court was right; and we prefer to consider the questions of law involved in it rather than put them aside upon a technical question of practice.

1. The first question, then, which we shall consider relates to the propriety of the action of the circuit court in sustaining the demurrer to the second count of the answer. The defence here stated is, that the indebtedness sued for

was created by the terms of the contract of January 9, 1846, and that by said instrument the plaintiff agreed on certain conditions, to convey its gas property to the defendant on January 1, 1865, or on January 1, 1870 ; that the price specified in said contract to be paid by the defendant to the plaintiff for gas furnished to the public lamps, to wit, $25 per annum for each lamp, was greatly in excess of the actual value of the gas, and was fixed with special reference to the fact that the defendant, by the contract, was, if it so elected, to become the owner of the gas-works at one of the times mentioned ; that the defendant observed the contract and paid to the plaintiff large sums of money for the gas furnished thereunder at the rate above mentioned, and in excess of the actual value of all gas so furnished ; and that the plaintiff refused to fulfil the contract, and refused to convey its property at the times mentioned, or either of them, although the defendant performed its part of the agreement touching the same ; wherefore the consideration for the defendant's promise to pay the rate specified in said contract for gas wholly failed, and on March 1, 1873, there was nothing due or owing to the plaintiff for gas theretofore furnished to the defendant. Recollecting that under our system of pleading each count in a petition or answer must be complete in itself, and is not aided by what is stated in any other count unless reference thereto is expressly made, and must, in order to stand, state within itself a good cause of action or defence ( *Clark* v. *Iron Co.*, 9 Mo. App. 446 ; *Boeckler* v. *Railroad Co.*, 10 Mo. App. 448), it seems clear that this count was bad on demurrer. An answer, to be good, must either deny or confess and avoid the material facts stated in the petition. This count in the answer does neither. The petition, after stating by way of inducement the circumstances which led to the making of the tripartite contract, counts upon the agreement contained in that contract, by the plaintiff, to pay certain bills due to the de-

fendant, to consider all causes of action between them as settled, to cancel the contract of 1846, and to absolve both parties therefrom. This count of the answer does not deny that such a contract was made. It does not assert that it was made without consideration, or upon a consideration which had subsequently failed ; or that it was imposed upon the defendant through fraud ; or that any of the parties thereto was incompetent to enter into it, or that it has been subsequently discharged by the default or voluntary act of any of the parties to it. It merely states that if anything is due the plaintiff, it is not due by virtue of the tripartite contract, but is due by virtue of the previous contract of 1846, which contract the plaintiff has violated, and is hence not entitled to recover. But the clause of the tripartite contract above set out, and which is in no way impugned by the defendant's answer, contains an agreement that the contract of 1846 is to be cancelled and both parties absolved therefrom. This being so, it is no answer to a suit on the tripartite contract that the previous contract had been violated by the plaintiff. In fact this count in the answer is nothing more than a statement by the defendant, for the plaintiff, of a different cause of action than that stated by the plaintiff, and an avoidance of the cause of action so stated. It is not an answer to the plaintiff's pleading, but an answer to a pleading which the defendant has made for the plaintiff. It is just as though the plaintiff should say to the defendant, " We want you to pay us what you owe us under the contract of 1873, in which you absolved us from liability for any breaches of the contract of 1846, which we had committed, and agreed to pay us a certain indebtedness which had accrued thereunder ;" and the defendant replies, " We will not pay you this indebtedness, notwithstanding we agreed to pay it in the contract of 1873, because it originally accrued under the contract of 1846, which contract you violated, but from the consequences of which violation we absolved you in the contract

of 1873." It is clearly bad pleading, and the demurrer thereto was properly sustained.

2. What is said with reference to the second count applies in principle to each of the remaining. The third count is a counter-claim. It states in substance that under the charter of the plaintiff, the defendant was empowered to buy the plaintiff's gas-works, etc., on January 1, 1860, or on January 1, 1865, if it resolved to do so, and gave six months' notice, etc., and that the defendant complied with the charter in the particulars mentioned, but the plaintiff refused to observe the same and refused to sell and transfer its property to the defendant, whereby the defendant was damaged in the sum of $2,000,000, for which judgment is asked.

This count, like the preceding one, is bad, because, without impugning in any way the contract of 1873, as set out in the petition, it sets up as a counter-claim a cause of action which subsisted, if at all, at the time of making the contract of 1873, and which, by the terms of the contract, was " to be considered as settled." In other words, the plaintiff's petition shows that the plaintiff stands under no liability to the defendant by virtue of anything happening prior to the 1st of March, 1873. Without denying this, or pleading any facts, the legal effect of which is to show the contrary, the defendant sets up as a counter-claim a cause of action accruing several years before, from which, by the terms of the contract of 1873, the plaintiff stands absolved.

But there is still another ground on which we might, if necessary, rest our conclusion that the demurrer to this count was rightly sustained. It appears on the face of this count of the answer, that the liability of the plaintiff to the defendant therein set up, accrued, if at all, not later than the first day of January, 1865. This action was brought on the thirty-first day of July, 1875, more than ten years thereafter, and the amended answer in which this counter-claim is set up, was not filed until the December term,

1879, or nearly fifteen years thereafter. It thus appears upon the face of this count of the answer, that the demand asserted against the plaintiff was, at the time it was pleaded, barred by the statute of limitations; and it is a settled rule of pleading in this state, that a pleading which sets up a claim which appears on its face to be absolutely barred by limitation, may be taken advantage of by demurrer (*Boyce v. Christy*, 47 Mo. 70; *The State to use v. Bird*, 22 Mo. 470; *McNair v. Lott*, 25 Mo. 182; *Coudrey v. Gilliam*, 60 Mo. 86, 98; *Henoch v. Chaney*, 61 Mo. 129, 133); and we incline to think that this is such a case.

3. Nor do we see any error in sustaining the demurrer to the fourth count in the answer. It is stated in this count that, by the amended charter of the plaintiff, its corporate life was to terminate on January 1, 1865, and in the event that the city did not resolve to purchase its gas-works, etc., in 1860 or 1865, as provided in the charter of the plaintiff, there was to be an extension of the charter for an additional term of twenty-five years from January 1, 1865; that the city did resolve to purchase as aforesaid, in 1860 and also in 1865; hence the charter was not extended, but expired by limitation on January 1, 1865, and therefore the plaintiff had no power to make the contract of February 28, 1873, or to institute or prosecute this suit.

It is obvious that this count is inconsistent with the count which precedes it, and also with the count which follows it both of which set up counter-claims and ask for judgment against the plaintiff. These counter-claims are substantive causes of action asserted by the defendant against the plaintiff. If the plaintiff is not a corporation, as the defendant asserts in this count, so that it cannot maintain this action against the defendant, then it follows that the defendant could not possibly have judgment against the plaintiff upon any counter-claim; for if the plaintiff cannot sue it cannot be sued. Of course the plaintiff's counsel do not expect us to hold that the defences set up in their third and

fifth counts are good, and that this count is good also. It does not follow, however, that we should hold that all three of these counts are bad. Without reference to this repugnancy, we hold that this count is bad in substance, because the plaintiff's petition declares upon a written contract, entered into between the plaintiff and the defendant, by which the defendant solemnly admits the capacity of the plaintiff to enter into a binding obligation as a corporation. Having done this, the law will not now permit it, when sued upon a promise contained in such contract, to set up that the plaintiff has no corporate capacity to enforce the contract by suit. The defendant, under such circumstances, is estopped to deny the plaintiff's corporate existence. Whether or not its charter has expired by limitation is a question which cannot be adjudicated in a collateral proceeding such as this ; it can only be raised in a direct proceeding between the State of Missouri and the defendant. *City of St. Louis* v. *Shields*, 62 Mo. 247, 251.

4. The demurrer to the fifth count of the answer was also properly sustained. This count sets up as a counter-claim that, by the terms of the contract of 1846, the plaintiff agreed to sell its property to the defendant on January 1, 1870, upon certain conditions, which were complied with by the defendant, but, nevertheless, the plaintiff refused to perform the contract, to the defendant's damage in the sum of $3,000,000.

This count is open to precisely the objection taken to the third count. Without denying, confessing and avoiding, or in any way impugning the allegations contained in the petition as to the contract of 1873, it sets up a cause of action which, if it existed at all, existed prior to the contract of 1873, and which, by the very terms of that contract, is to be considered as settled.

Again, one of the grounds of the demurrer to this count of the answer was, that the demand therein set up by way of counter-claim was barred by limitation. It sets up a

demand for damages for breach of a contract. It is not in the nature of an action for the recovery of real property, and hence falls within the second article of Chapter 48 of the Revised Statutes, relating to the limitation of actions (Rev. Stats., sect. 3228) ; it is not an action upon any writing for the payment of money or property ; nor an action upon any breach of warranty contained in any deed of conveyance of land ; nor upon any covenant of seisin contained in such a deed ; nor is it an action for relief not otherwise provided for in our statute of limitations ; and hence, it does not' fall within the statute of ten years relating to personal actions (Rev. Stats., sect. 3229) ; but it is in the nature of an action founded upon an express contract, and is, therefore, barred in five years under the terms of section 3230 of the Revised Statutes. Now, the cause of action set up in this count of the answer, accrued to the defendant, if at all, on the first day of January, 1870. This suit was brought five years and seven months thereafter, and this counter-claim was filed nearly nine years thereafter. It therefore appears on its face that it was barred by limitation ; and for this reason also, the demurrer to it was properly sustained.

We are, perhaps, entitled to look at these four special defences in a broader light. They involve simply an attempt to reassert and relitigate what was settled by the supreme court in the case of the *City of St. Louis* v. *St. Louis Gas-Light Company* (70 Mo. 69). In that case the validity and binding force of the tripartite contract of 1873, were firmly established. All of the judges in that case were of the opinion that it was a valid and binding agreement, and Napton, J., no doubt, summed up the views of the whole court when he said : " The tripartite contract of 1873 was a settlement upon adequate consideration of all antecedent disputes, and put an end to all claims arising under the contract of 1846." 70 Mo. 122. Indeed, there never could have been any doubt about this, for the con-

tract of 1873 so expresses the intention of the parties in the most explicit terms.

6. These four special defences out of the way, the cause stood for trial upon the plaintiff's petition and the defendant's general denial. A special jury having been empanelled, the defendant objected to any evidence being received in support of the petition, on the ground that no cause of action is stated therein ; upon which the learned judge who presided at the trial made the following ruling : " In this matter I shall hold that the action is founded on the promises contained in the contract of 1873, to pay the bills of the gas company for gas heretofore furnished to the city ; that, being founded on that instrument, it was the only contract necessary to be filed with the petition, and that it was not necessary to have filed the bills, since the action is not founded on the bills ; that the bills are at most mere instruments of evidence, and as such it was not necessary to file them. I shall hold further, that it may be shown by any competent proof what the amount of the bills may have been, to which reference is made in the contract of 1873 ; that the inquiry here is not as to the consideration of the bills, but what the amount may have been of the bills, to which reference is made in the contract ; and, further, that if, after the execution of the contract of 1873, the auditor of the city and the gas company acting under said contract, had an accounting and cast up the amount of the city gas-bills for gas purporting to have been furnished to the city prior to the contract of 1873, such facts may be shown. The general objection to all such testimony will be overruled." To which ruling the defendant's counsel then and there excepted.

We do not gather from the defendant's brief what his objections are to this ruling. The suit is not upon the bills ; this is the position of both parties. It is upon a contract to pay certain bills then existing, some of which had been sued upon, and upon all of which, as the subsequent

evidence shows, demand for payment had previously been made by the plaintiff upon the defendant. The promise upon which the suit is brought is, that " the bills of the St. Louis Gas-Light Company against the city, for gas heretofore furnished to the city under the contract of date January 9, A. D. 1846, with interest at the rate of six per centum per annum until paid, are to be and will be paid by the city as follows," etc. Looking, as we are entitled to do, at this ruling in the light of what subsequently occurred at the trial, it seems clear that the contracting parties intended to recognize the existence, validity, and correctness of certain bills, previously rendered by the plaintiff to the defendant, which had not been paid, but which had been entered upon the books of the city auditor.

Nor was there any error in admitting evidence of the fact that the auditor of the city and the president of the gas company had an accounting together and cast up the amount of gas-bills due from the city to the company, and which the city agreed to pay in the contract of 1873. Had the suit been upon the bills, the fact that they had been examined by the defendant's accounting officer and found correct, would be admissible as an evidential fact tending to show that they were correct. But the petition alleges, and the answer denies, that the defendant, by its proper officer, agreed with the plaintiff that the amount sued for was the amount due on account of the bills which the defendant had thus promised to pay. This was one of the issues to be tried; whether there had been a proper accounting and settlement of the amount due under the tripartite contract was hence clearly material to be shown.

7. What has just been said will apply generally to objections made by the defendant to the testimony of the first witness offered by the plaintiff. It was proposed to show by this witness that he, acting on behalf of the plaintiff, had presented quarterly bills of the plaintiff against the defendant for gas consumed in the public lamps of

the city from November 1, 1866, to April 30, 1870, and also for the internal revenue tax paid by the plaintiff to the United States on gas consumed for those quarters, to the mayor of the defendant. The defendant objected to this testimony on the following grounds : (1) That there is no suit upon these bills at all ; (2) that no such bills have been filed with the pleadings or embodied in them ; (3) that they embrace matters of government tax for which there is no promise to pay in the contract of 1873 ; and (4), that they are mere summaries, and do not disclose the amount of gas furnished. These objections were overruled, and the defendant excepted. Similar testimony, against the same objections and exceptions, was received as to the bills for the quarters ending July 31, 1870, October 31, 1871, January 31, 1871, April 30, 1871, July 31, 1871, October 30, 1872, January 31, 1873, and for the month of February, 1873.

As to the first two of these objections, we have just expressed our views. As to the last, that the bills are mere summaries, it may be said that it does not appear that any objections were ever made to them on that ground at the time they were presented, but that, on the contrary, they were audited by entering them on the books of the defendant's auditor of accounts as a part of the floating debt of the city. If the bills were not sufficiently itemized, the proper time to object and to demand closer scrutiny was at the time they were first presented, when, presumably, the evidence of their correctness was fresh and accessible.

But, in the view we take, this was not a good objection, for the further reason that the suit is upon a promise to pay certain bills which, as the evidence shows, had been presented and entered upon the defendant's books, and these are shown to be the bills so presented and entered, and which the defendant had promised to pay. Having promised to pay them, we do not see how they can be overhauled, item by item, at this late day, without violating the promise.

The bills, as presented, embraced certain amounts paid by the plaintiff to the United States as internal revenue tax, in the aggregate sum of $48,838. It insisted that, although the city may be liable to pay the bills, so far as they embrace charges for gas furnished, yet it is not liable to refund to the plaintiff these items of government tax. We think that these items may fairly be deemed a part of the bills which the city agreed to pay. But if the suit were upon the bills themselves, and they were open to contest item by item, the city would undoubtedly be liable for these items of tax. The acts of Congress under which the tax was laid (12 U. S. Stats. at Large, 463 ; 13 *Id.* 264 ; 14 *Id.* 128), laid a tax of so much per thousand cubic feet upon illuminating gas manufactured and sold, and provided that " *all gas companies are hereby authorized to add the duty or tax imposed by law to the price per thousand cubic feet on gas sold;* provided, further, that all gas furnished for lighting street lamps, and not measured, * * * shall be subject to duty, whatever the amount of product, and may be estimated." 13 U. S. Stats. 264, 265. A subsequent statute, on the same subject, provided that "until the thirtieth day of April, 1867, all gas companies whose price is fixed by law, are authorized to add the tax herein imposed, to the price per thousand feet on gas sold ; and all such companies which have heretofore contracted to furnish gas to municipal corporations are, in like manner and for the same period, authorized to add such tax to such contract price." 14 U. S. Stats. 128. And then followed the provisions of the preceding statute in regard to the imposition of the tax in case of gas furnished for lighting lamps and not measured, but estimated. By a subsequent statute the words, " until the thirtieth day of April, 1867," were stricken out. 14 U. S. Stats. 474. The duty then is laid upon the consumer, and not upon the manufacturer ; but it is collected from the manufacturer merely for reasons of economy and convenience. Instances of this manner of collecting taxes are

frequent. For instance, taxes are frequently laid upon shares of banking corporations and collected from the corporations themselves, they having the right to deduct a *pro rata* of the sum so paid from the dividends accruing to each shareholder. Here the tax is really upon the shareholder, and not upon the corporation. So in the case before us, the purpose of Congress undoubtedly was to levy the tax in the cases named upon the consumers, or at least to authorize the manufacturers and vendors to charge it against their consumers under existing contracts.

8. The plaintiff then offered in evidence the bills spoken of, and they were admitted against the objection of the defendant. There was no error in this, for reasons already stated. The bills existed at the time of the tripartite contract; their existence was recognized in that contract, and in that contract the defendant agreed to pay them. They were clearly competent evidence of the amounts thus agreed to be paid. The case resembles a supposed case where A. guarantees payment of the note of B.; the note not being paid, suit is brought against A. The suit against A. is not, however, upon the note, but upon his contract of guaranty. The note, nevertheless, is necessarily admissible in evidence, to show what promise of B. it was that A. agreed to make good.

9. The circuit court permitted the plaintiff to prove, against the objection of the defendant, that after the execution of the tripartite contract, Oliver A. Hart, president of the plaintiff company, and Walter C. Carr, auditor of the defendant, conferred together with regard to the amount due from the defendant to the plaintiff under the tripartite agreement; that Mr. Carr, acting under the direction of the mayor and comptroller, made a settlement with the plaintiff; stated the account down to February 28, 1873, drew down the balance due and settled it upon the books of the city; that in so doing he accepted as correct the amounts charged against the city on the books of his pre-

decessor, which had been examined and approved, and
which he had no power to go behind; that Mr. Hart brought
a statement from the books of the plaintiff, which made the
amount some $2,000 more than that shown by the books
of the defendant; that Mr. Carr refused to make the set-
tlement except on the basis of the entries upon the books
of the defendant; that after some delay Mr. Hart, on the
part of the plaintiff, yielded to Mr. Carr, and agreed that
the amounts shown on the books of the city should stand
as the correct amounts. An ordinance of the city was
proved in evidence, which provides that "the city auditor
shall be the general accountant for the city, and shall re-
ceive and preserve in his office all city account-books, and
all vouchers, documents, and papers relating to the accounts
and contracts of the city, its revenue, debt, and fiscal affairs,
whether between the city and any officer thereof, or between
the city and any person or any body corporate, except
where said books, vouchers, or documents, are by ordinance
or charter placed in the custody of some other officer or
person." It is also provided by this ordinance that "it
shall be the duty of the city auditor   *   *   *   to examine,
audit, and adjust all accounts, claims, and demands for or
against the city, for the payment of which any money may
be drawn out of the city treasury, and after having examined
the same, with all accompanying vouchers and documents,
to certify the balance or true state of such claims or de-
mands, except where some other officer is charged with
such duty. Second, to keep proper books in which the
accounts of the city shall be kept by double entry in the
manner hereinafter provided." The ordinance also pro-
vides that "there shall be a comptroller, whose duty it
shall be to exercise a general supervision over all the city
officers regarding the proper discharge of their official du-
ties; over the collection and return into the city treasury
of the revenue of the city of whatever description; over the
city debts and all other fiscal concerns of the city; over

any property of the city; over all legal and other proceedings in which the city's interest is involved, or in any manner concerned. He shall examine the books of the several city officers as often as he shall think proper, and see that they are properly and neatly kept; and said books shall be at all times subject to the inspection of the comptroller." The same ordinance provides that "the mayor shall have an additional supervision and control over all city officers, and may, whenever he shall see fit, examine into the condition of their respective offices, the books, papers, and records therein, the manner of conducting their official business, and may call upon any officer, clerk, or deputy for information in relation to any matter pertaining to his office."

It was thus clearly within the competency of the mayor and comptroller to direct the settlement of this account. It was undoubtedly within the intention of the parties to the tripartite contract that it should be so settled, though there is no specific direction to that effect, nor is there anything in the contract to indicate an intention that it should be settled before the city had prepared itself to pay it under the terms of the contract. The settlement was made from entries upon the books of the city, which the auditor was required to keep, and over which the comptroller had supervisory authority. The various items from which the settlement was made were presumptively based upon proper vouchers, which had been duly audited and allowed by the then auditor and his predecessors, and which were preserved for reference in the office of the auditor, as required by the ordinance above quoted. The settlement thus made between the auditor on the part of the defendant and Mr. Hart on the part of the plaintiff, is in the nature of an account stated, and, in the absence of fraud or mutual mistake, is conclusive evidence of the amount due from the plaintiff to the defendant at the time when the accounting was thus had. *Pickle* v. *Chamber of Commerce Assn.*, 10 Mo. App. 191. There

was, therefore, no error in admitting the testimony in question.

10. Another objection taken to the testimony given by Mr. Carr as to the settlement made by him with the plaintiff on the books of the city when acting as city auditor, was, that the auditor is forbidden by the law governing his office to audit or allow a claim which has accrued more than one year prior to the time when he is called upon to act on it. Objection was accordingly made to the witness stating anything done by him in reference to any of the accounts which accrued more than one year prior to March 1, 1873. An ordinance proved in evidence provides that " no claim against the city which is not founded on a bond or other writing executed by the city, shall be audited and settled, which has not been presented within one year after said claim became due." We do not think this objection well taken. The evidence shows that the bills were all presented immediately after they became due. The fact that they were entered upon the books of the auditor as charges against the city, is presumptive evidence that they were properly audited at the time they were presented. The act of Auditor Carr, concerning which he testified, was not the auditing and settling of any claim within the meaning of the ordinance quoted. It was simply the act of stating an account and drawing down the balance, as he found it upon the books. The claims were presumptively audited and allowed at the times when the original entries were made from which he thus stated the account. That this is the correct view is shown by the auditor himself on cross-examination, that in making up this account he did not have the bills of the plaintiff, but gained his information from the books and records at the city hall. We think that this objection was properly overruled.

11. The journal entries in the books of account of the defendant kept in the office of the city auditor from April,

1870, to April, 1873, with reference to the amounts due the plaintiff for illuminating gas furnished and consumed in the public lamps of the defendant, were next offered in evidence. To this the defendant objected, on the ground that the city auditor had no power to make admissions, either verbal or by book-keeping, affecting the city. We think there was no error in overruling this objection. We can perceive no reason why the rule which makes the entries in the books of a merchant or of a bank *prima facie* evidence to charge such merchant, or such bank ( 2 Whart. on Ev., sect. 1131), should not apply to the books of account of a municipal corporation when kept by the proper officer, as this was shown to have been. Such entries, of course, are not conclusive. They are undoubtedly subject to parol explanation. If the auditor of St. Louis, or his clerk, were to make a mistake in adding a column of figures whereby his books were made to show that the city was indebted in an amount it did not owe, no court of justice, upon proper evidence, would refuse to rectify the mistake, or would permit the excess over what was really due to be collected. But it nevertheless remains that the presumption of right acting attends the conduct of every person in an official station, until the contrary is shown, and this presumption clothes the entries in the books of an accounting officer of a public corporation, in so far as they operate to charge the corporation itself, with an inference in favor of their correctness quite as strong as that which attaches to the books of account of a private person or corporation. These entries were clearly admissible.

12. Several rulings of the circuit court may now be considered together, calling for our decision upon the question, from what date or dates interest should have been computed by the jury in making up their verdict. The tripartite agreement, it will be recalled, provided merely for the payment of the bills in question "with interest at the rate of six per cent per annum until paid." Interest

from what date? The defendant's counsel take the position that the plaintiff was not entitled to interest except from and after the date of the tripartite agreement, namely, February 28, 1873, and he asked for an instruction to that effect, which was refused. This ruling, we think, was correct. We have no doubt that it was the intention of the parties to the contract, that interest at six per cent per annum should run from the dates when the bills severally became due until the date when they should be paid under the terms of the contract. As many of these bills had been running several years, it must have been thought equitable in making the settlement, that they should carry interest from their respective dates. If anything so unusual had been intended as to limit the running of interest from the date of the tripartite contract, the contracting parties would probably have so expressed it.

But upon another branch of this question we cannot agree with the learned judge who presided at the trial. It appears that when the auditor of the city and the president of the gas company made the settlement already spoken of, the auditor drew down the amount shown by the books to be due the company, and added interest from the date at which the several bills accrued. The item of interest so added is shown by the testimony of a witness introduced by the defendant — Mr. Gobel, deputy comptroller of the city — to have amounted to the aggregate sum of $82,599.69; and this is not contradicted or questioned. The theory of the plaintiff is, that their suit is for a balance shown to be due them upon a stated account, and that interest runs upon the balance, according to a well-known rule with regard to interest upon stated accounts. This principle, as stated by the supreme court of Pennsylvania, is that, "when an account is settled and a balance struck, the balance clearly bears interest, notwithstanding interest has been added to the account." *McClelland* v. *West*, 70 Pa. St. 187. But this is not an arbitrary and universal

rule ; it is nothing more than an implication of law that the parties, in adjusting their matters of difference, so intended. In other words, it rests upon the doctrine of an. implied contract ; or, as some courts have expressed it, the stating of an account and the striking of a balance is regarded as *evidence of an agreement* to pay interest upon the interest which is included in such balance. *Ex parte Bevan*, 9 Ves. 224 ; *Barclay* v. *Kennedy*, 3 Wash. C. Ct. 350, 352 ; *Young* v. *Hill*, 6 Hun, 613, 619. " Independently of the consideration that an account stated and settled becomes in effect and is a new agreement, such an agreement, we think, may be implied to pay interest upon interest from an account stated, as much as such agreement can be implied in other cases." *Young* v. *Hill*, 6 Hun, 613, 619. This principle may possibly be applicable in some cases to settlements made by accounting officers of municipal corporations, but it obviously cannot apply to a case where the ordinance from which the accounting officer derives the authority to state an account prescribes a different rule as to the running of interest. Now, as we have seen, the tripartite ordinance under which the auditor stated this account, provided, simply, that the bills should bear interest at six per cent per annum until paid. It does not authorize the auditor, or any other officer of the city, to do any act which should result in compounding this interest, or which should render the city liable to pay interest upon so much of the interest thus agreed to be paid as had already accrued. Besides, to admit the principle that the auditor of a municipal corporation can, by his mere voluntary act, in settling an account upon his books, render the city liable for compound interest, is to clothe him with a dangerous authority. Let us see how such a principle might have worked in the case before us. The bills embraced in the amount stated by the auditor, had been rendered every three months, and some of them oftener, for a period of more than five years. Suppose the auditor,

acting under his general powers as accounting officer of the city, had stated an account with the plaintiff and drawn down the balance on his books every year. This would have resulted in compounding the interest at annual rests, and a large liability would thus have been imposed upon the city by way of compound interest. But it may be answered, the auditor in such a case would have no authority to add interest at all, there being no ordinance authorizing him to do it. This answer affords an answer to the plaintiff's position. It is that the contract under which they must recover interest, is a contract made by the legislative body of the city, which was the proper agent for that purpose, and which the auditor was not. Nor would the result have been different if such a transaction as the one in controversy had taken place between two private persons. Suppose, for instance, that A. and B., having matters of difference pending between them, had entered into a contract to settle these matters of difference, in which contract B. had obligated himself to pay within two years certain bills which A. had preferred against him. Suppose that immediately thereafter, their respective book-keepers should confer together and figure up the account, and that B.'s book-keeper should enter upon B.'s books a certain amount as the balance due under the agreement, including interest on the bills from their respective dates to the time of the making of the contract. We apprehend that this would not warrant the computing of interest upon so much of the balance thus struck as represents interest. In other words, B. would stand liable to pay simple interest upon the bills according to the terms of the contract of settlement, and would not be liable to pay compound interest in consequence of this act of his book-keeper. Under our statute, as well as by the general law, compound interest does not accrue except as a matter of express contract (Wag. Stats. 783, sect. 6 ; *Gunn* v. *Head*, 21 Mo. 432 ; *Stoner* v. *Evans*, 38 Mo. 461), and the auditor of the

city of St. Louis is not shown to possess the power to make a contract which would charge the city with compound interest. The learned judge instructed the jury that the plaintiff was entitled to recover interest upon the balance so struck at the rate of six per cent per annum. Under this instruction the jury returned a verdict for $781,944.48. It was shown by the testimony of Mr. Gobel — and no effort was made to question or rebut his statement — that, computing the amount at simple interest from the date when the bills respectively fall due to the date of the verdict, the amount due was $746,178.70 ; making an excess of $35,765.78, accruing by way of compound interest. If the plaintiff will, within ten days, file with the clerk a *remittitur* of this sum as of the date of the verdict, May 18, 1880, the judgment will be affirmed ; otherwise it will be reversed and the cause remanded for a new trial.

Judge BAKEWELL concurs ; Judge LEWIS did not sit.