E. D. Lindersmith *et al.*, Respondents, v. South Missouri Land Company, Appellant.

**St. Louis Court of Appeals, May 22, 1888.**

Contract—Settlement.—The plaintiffs contracted to make and furnish railroad ties out of timber belonging to the defendant, and were to be paid a fixed price for such as were accepted by a designated inspector. Nothing was said about any payment for "culls," meaning such ties as should not be so accepted. The parties settled in full for the accepted ties at the end of each month, and a final settlement and payment in full were made at the end of all their transactions. But the plaintiffs never at any time demanded payment for culls, until the institution of the present suit, in which they claim compensation for the culls made by them and left upon the ground. *Held*, that nothing appears upon which the plaintiffs have a right of action.

Appeal from the Howell Circuit Court, Hon. J. F. Hale, Judge.

*Reversed.*

Olden & Green, for the appellant: "Implied contracts are such as reason and justice dictate, and which, therefore, the law presumes every man undertakes to perform." Bouvier. "The law never implies what the parties never intended ; never raises a promise when the evidence shows the parties intended none." *Bank v. Aull*, 80 Mo. 199. In the case of *Pickel v. St. Louis Chamber of Commerce Association*, 10 Mo. App. 191, Thompson, J., says: "That when parties have mutual matters of account between them, growing out of a contract, deliberately account together and state a balance, and the party who, on such accounting, is found indebted to the other, pays the debt or gives a written obligation for its payment, this settlement is so far conclusive between the parties that it cannot be re-opened or gone into, either at law or in equity, except upon

clear proof of fraud, or mistake, or of an express understanding that certain matters were left open for future adjustment." LEWIS, P. J., of this court says : The opinion of this court in *Pickel v. Chamber of Commerce*, 10 Mo. App. 191, is conclusive against the attacking of such settlement, "except upon clear proof of fraud or mistake, or of an express understanding that certain matters were left open for future adjustment." *Buffington v. Land Company*, 25 Mo. App. 492.    "In ordinary cases where the action is one at law, this court will not interfere in regard to questions of the mere weight of evidence, but it will interfere where the verdict is clearly against the evidence." *Garrett v. Greenwell*, 92 Mo. 120.

JOHN H. WINNINGHAM, for the respondents.

THOMPSON, J., delivered the opinion of the court.

This action was brought before a justice of the peace to recover the reasonable value of three hundred and fifty railroad ties, alleged to have been made for the defendant, which reasonable value is alleged to be seventy dollars.

The evidence adduced at the trial, as preserved in the bill of exceptions, was as follows :

J. H. Moreledge, one of the plaintiffs, testified : "Myself and Lindersmith, the plaintiff in this suit, had a contract with the South Missouri Land Company to get out ties.    We worked and got them, but each delivered them separately and got paid separately.    We were to deliver ties and have our inspections each week, and were to get this weekly pay out of the company store for as much as we wanted in that way, and then what was due us at the end of each month we were to have in cash.    We were to make standard ties, and were to have twenty cents apiece for them, and were to deliver them at different points along the railroad on the right of way. It was agreed that Ira Alexander should inspect the ties and receive them.    They received them and hauled

them off, and the ties that we have sued for have not been paid for."

On cross-examination, the same witness said: "The ties we have sued for are what Alexander inspected and marked as *cull ties*. I am an experienced tie-maker, and the rule is, when we get pay for cull ties, we get some places ten cents, and some places one-third the price of good ties. The ties sued for are, many of them, bad ties, and were properly marked as cull ties on the inspection; but I cannot say how many of them were of this kind. The object of the inspection is to ascertain the defective ties, so that they may be known from the good ties; and it was agreed that this should be done by Alexander. If they took these cull ties and hauled them off, I should think they were good enough for them to pay for, and they ought to be worth as much as the others if they took them the same. I commenced making ties about October, 1886, and, during all this time I had settlements at the end of each month, and was paid in full for the ties and transactions had during that month, and I gave my receipt signed by my signature, acknowledging a settlement in full; except these cull ties were not paid for." Here the witness was shown the items and receipts for each month he had made ties, and he acknowledged that he had signed the receipts monthly; and the counsel for plaintiffs at this point admitted that both of the plaintiffs had given receipts in full settlement for each and every month for all the time they worked. The witness then proceeded: "There was nothing said about cull ties at the time we contracted. The inspection we agreed to, I suppose, was to find out the bad ties we made. That was the object of it. I never went to the South Missouri Land Company and demanded pay for these cull ties we have sued for."

Jerry Lindersmith, a witness for the plaintiff, testified: "I am the brother of plaintiff Lindersmith in this suit. I hauled the ties out. The ties sued for were cull ties, but they looked to me to be as good as the ones

they took, and I suppose they were worth twenty cents. I was present when the contract was made, and Alexander told plaintiffs he would pay them twenty cents apiece for all ties, to be paid for weekly in goods, or monthly in cash."

This was all the testimony offered by the plaintiffs.

Ira Alexander testified as follows for the defendant: "I was, at the time Lindersmith and Moreledge were making ties, in the employ of the South Missouri Land Company, and had charge of all the tie business in the woods. I employed plaintiffs to make ties, and agreed to pay them twenty cents apiece for all good ties, and was to pay nothing for bad ties, and the inspections were to be made by me. The ties were to be delivered on the right of way each week, and I was to inspect them at the end of each week, and was to pay them in goods each week if they wanted the goods, and at the end of each month they were to be paid in cash for what was due. I made the inspections and paid them in goods each week as they wanted them, and then, at the end of each month, we settled in full, and each of them gave receipts in full settlement of their accounts. It was expressly understood that they were to get nothing for cull ties. The cull ties they have sued for are still scattered along the line, and have not been used or converted by the company. They are of no use to us. The timber was the company's out of which the ties were made."

W. E. Drew, superintendent of the defendant, testified, among other things, as follows: "The culls are useless to us, is why we do not pay for them. We have not used nor converted these cull ties sued for. They are on the line of the road yet, and I have no use for them. I have settled with these men, and have here (exhibiting receipts for each month given by plaintiffs which plaintiffs' attorney admitted that the plaintiffs had given) the receipts in full for all the ties they ever made. They took the money without complaint or question, and signed the receipts, and have never demanded

anything more from me on this tie account. The company does not owe them a cent. We furnished them timber, and the contract was that if they made cull ties, they could not get any pay for them. It is a dead loss for us to have cull ties, because we lose the value of the timber which is thus spoilt, and, under the contract, they were to lose their labor for making ties. The loss of labor was to stand against our loss of timber." The witness admitted on cross-examination, that he had no conversation with the plaintiffs about the contract, and that all he knew about it was what he told Alexander to do in making it, but he added: "I settled with Lindersmith and Moreledge personally and took receipts in full for the whole transaction."

Upon this evidence, the jury returned a verdict for the plaintiffs in the sum of thirty-five dollars, half the sum sued for; judgment was entered thereon, and the defendant prosecutes this appeal.

We are of opinion that, upon the above evidence, plaintiffs were not entitled to recover anything. The only discrepancy which we discover between the evidence given on behalf of the plaintiffs and that given on behalf of defendant, relates to the question whether it was understood at the time of the making of the contract that the plaintiffs were *not* to get anything for culls or rejected ties. The plaintiffs' evidence is to the effect that nothing was said about whether they were to be paid for culls, and the defendant's evidence is to the effect that the understanding was that they were to get nothing for culls.

Leaving out of view this disputed question, the evidence shows conclusively the following facts: (1) That the subject-matter of this action was covered by an express contract between the parties; that, by the terms of this contract, the plaintiffs were to get twenty cents each for standard ties, and that it was not provided in the contract that they should get anything for rejected ties or culls. (2) That, in pursuance of this contract, the parties accounted together and settled from time to

time; that their last settlement was a settlement in full of all that was claimed to be due under the contract; and that there is no evidence of fraud or mistake such as is necessary to avoid this settlement. (3) There is no evidence that the defendant has used any of the rejected or cull ties *as ties*—that is, that they have put them to the use for which the ties were gotten out.

It is scarcely necessary to discuss a proposition so plain as that, upon a case in which the testimony presents the above elements, there can• be no recovery upon the theory of an implied contract. It is an elementary principle that the law never implies a contract where the parties have made an express contract which covers the whole subject-matter of the controversy. *Christy v. Price*, 7 Mo. 431. It is another principle equally indisputable that where parties having mutual matters of account between them, growing out of a contract, deliberately account together and state a balance, and the party who, on such accounting, is found indebted to the other, pays the debt, or gives a written obligation for its payment, this settlement is so far conclusive between the parties that it cannot be reopened or gone into, either at law or in equity, except upon clear proof of fraud or mistake, or of an express understanding that certain matters were left open for future adjust-ment. *Pickel v. Chamber of Commerce Association*, 10 Mo. App. 194, and cases cited; s. c., affirmed, 80 Mo. 65; *Gas Light Co. v. St. Louis*, 11 Mo. App. 73.

Here, then, the contract, stated according to the claim of the plaintiffs, was that they were to get twenty cents apiece for standard ties, subject to the inspection of Alexander, and there was no agreement that they were to get anything for rejected ties or culls. They have settled under the agreement, and it is admitted that they have been paid in full for all that they were to get under the agreement. They now seek to recover the reasonable value of the rejected ties or culls; and, if other difficulties were out of the way, they would at least have to prove that, notwithstanding they were

rejected by the inspector agreed upon by the terms of the contract, the defendant subsequently had accepted them by taking possession of them and using them for the purpose for which they were made. But, although the plaintiffs' evidence (denied by that of the defendant) tends to show that the defendant took possession of them, there is no evidence that the defendant has ever used a single one of them as ties. The timber of which they were made belonged to the defendant. The defendant did not lose its right of property in the timber from the mere fact that the plaintiffs had attempted to make ties out of it which would not pass inspection ; but the defendant had a right to take possession of the timber thus made into imperfect or rejected ties and to do what it pleased with it, since it was its own.

This action, therefore, has no foundation whatever, either in law or in justice. It would not subserve the purposes of justice to remand such a case for further contestation.

The judgment will be reversed, but the cause will not be remanded. It is so ordered. All the judges concur.