MARSHALL & MICHEL, Appellants, v. LARKIN'S SONS, Respondents.

Kansas City Court of Appeals, February 5, 1900.

1. **Compromise:** PRESUMPTION OF LAW: REOPENING OF LITIGATION. To prevent litigation the law favors settlements of differences and presumes that a deliberate settlement and payment and receipt of the money found due, embraces every element entering into the disputed contract and that the settlement was intended as a finality; and an attempt to relitigate such matters is vexatious and contrary to sound policy.

2. ———: CONSIDERATION: ACCORD AND SATISFACTION. The existence of a *bona fide* controversy as to facts with mutual concessions in compromise furnish a sufficient consideration for a new agreement; and in this case such new agreement may be viewed as an accord and satisfaction and binding, because the accord was executed.

3. **Contracts:** RESCISSION: ACTION. If a settlement of a controversy growing out of a former contract is regarded as a mere rescission thereof, no action can thereafter be based on said former contract, as the rescission terminated the same and all future relations are measured by the new contract on which alone suit can be brought.

Appeal from the Jasper Circuit Court.—*Hon. J. D. Perkins,*
Judge.

AFFIRMED.

*Cunningham & Dolan* for appellants.

- (1)  When a cause of action once accrues it can not be
discharged except by actual release.  Chapman v. Railway,
146 Mo. 481.  A release is an act or writing by which some
claim or interest is surrendered to another person.  Beach on
Modern Contr., sec. 456.  (2)  "It must, unless made for
some new consideration, be under seal to bind the person mak-
ing it, otherwise it will be nothing more than a promise with-
out consideration to forbear from the exercise of a right which
is not binding."  Lawson on Contr., sec. 480, and authorities
there cited.  (3)  The promise of respondents on taking back
the·bad flour, "that they in the future would only send first-
class flour in appellants' 'Reindeer' sacks," was simply what
they were bound to do under the old contract, and could furn-
ish no new consideration necessary to release damages for a
violation of that contract.  Beach on Modern Contr., sec. 173;
Orr v. Sanford, 74 Mo. App. 187; Lingfelder v. Brewing Co.,
103 Mo. 592, 593; Storck v. Metzer, 55 Mo. App. 26; Wen-
dover v. Baker, 121 Mo. 293, 294; Armstrong v. Tobacco Co.,
41 Mo. App. 254; Lee v. Saddlery Co., 38 Mo. App. 201;
Tiedeman on Sales, sec. 190; Long v. J. K. Armsby Co.,
43 Mo. App. 253; Voss v. Maguire, 18 Mo. App. 477.
(4)·  The performance of an act which the party is under a
legal obligation to perform can not constitute a considera-
tion for a promise.  Beach on Modern Contr., secs. 157, 165,
and authorities cited; Robinson v. Jewett, 116 N. Y. 40;
Machine Co. v. Pringle, 41 Neb. 265; 59 N. W. Rep. 804;
Wendover v. Baker, 121 Mo. 294, 296.

*J. W. McAntire* for respondent.

(1)   On the twenty-eighth day of January, 1897, after there had been an accounting and balance struck and a settlement agreed upon by plaintiffs and defendants, plaintiffs drew upon defendants for one hundred and sixty-six and eighty-nine one-hundredths dollars to balance account.   No matter relating to shipment of flour, complained of by plaintiffs as being unsound, was by express understanding left open for future adjustment, hence such settlement can not be reopened except upon clear proof of fraud or mistake.   Pickel v. Chamber of Commerce, 10 Mo. App. 191; Gas Light Co. v. St. Louis, 11 Mo. App. 73; Buffington v. Land Co., 25 Mo. App. 495; Lindersmith v. Land Co., 31 Mo. App. 263; King v. Ins. Co., 36 Mo. App. 140; Pickel v. Chamber of Commerce, 80 Mo. 65.   (2)  The presumption is that all previous dealings between the parties relating to the subject-matter of the account was settled.   Gibson v. Hanna, 12 Mo. 165.

GILL, J.—This is an action for damages growing out of the sale of certain large quantities of flour made by defendants to plaintiffs in the latter part of the year 1896.   The principal defense was that the parties about that time met and settled the controversy.

Plaintiffs were wholesale dealers of flour at Joplin, Mo., and defendants were manufacturers of flour at Ellsworth, Kansas.   In 1896, and for several years prior thereto, plaintiffs had sold large quantities of a certain brand of flour known as "Reindeer," and for which they had a registered trade mark.   This flour was advertised and sold as a superior quality of patent flour.   For several years defendants had been furnishing this flour to plaintiffs, the latter sending the branded sacks to the defendants at Ellsworth, where they were filled and returned to plaintiffs' store at Joplin.   The business was conducted in this way for a long time without complaint or

misunderstanding until in October, November and December, 1896, when plaintiffs objected that the flour furnished for the "Reindeer" sacks did not fill the requirement or come up to the grade contracted for. Plaintiffs complained that the flour received during those months was inferior; that there was much dissatisfaction among their customers; that they had been compelled to take much of the flour back, and that their trade had been injured, etc.

Thereupon, in December, 1896, one of the defendants came from Ellsworth to Joplin to adjust and settle the controversy. He went at once to plaintiffs' store and after considerable negotiations, covering more than a day, an agreement for compromise or settlement was reached. As to this, Marshall, one of the plaintiffs and the main witness, testified as follows:

"Finally, I said: 'How do you want to settle?' We estimated what there was in the house and what there was to come in. We of course wanted him to take the flour; he wanted us to take it. We didn't want it, and finally he says: 'I will tell you what I will do. If you will take so much flour, I will take the rest of it.' He wanted us to take so much, I don't know how much, more than I wanted to tackle of inferior flour. Finally we got together on this kind of a contract. He said: 'If you will take 90,000 pounds of flour and handle on your account, we will take the rest of it that comes in and all the rest there is and give you back as much good flour as we take out, if you will bring no claim against us at all on this account, and we will see you get nothing in Reindeer sacks except the best flour we, or any other Kansas miller can grind,' and we settled upon that basis. Then he wanted to know how we would handle the flour in Joplin that was his. We agreed to leave it stored in our warehouse and sack it for him, and act as his agent; do whatever he wanted. Of course, expenses entailed, drayage, sacking, rent, interest, insurance and all those things was to be borne by

Larkin's Sons. They agreed to that and authorized us to advance whatever money was needed to handle it, in whatever packages they sent us to put it in, whenever they ordered it out, and whenever these amounts of interest and rent and things like that accumulated, simply to make a draft against them to balance it all. That was the agreement and he went home."

From the evidence it seems that the above mentioned agreement was carried out. The Kansas millers took about 222,000 pounds of the defective flour for which they gave to plaintiffs good flour instead, and said 222,000 pounds was taken back into plaintiffs' store, re-sacked, shipped south and sold on the market for and on account of defendants; and thereafter, in January, 1897, following the settlement of December, 1896, these plaintiffs rendered an account of all expenses, etc., attending the storage, insurance and handling of the imperfect flour, drew on defendants therefor and the same was paid.

It seems that the parties considered and treated all these differences occurring in the last three months of the year 1896 as finally adjusted and settled. They continued to deal with each other until the last days of December, 1897 (a year after the above settlement), when another controversy arose over certain flour furnished by defendants. This resulted in a suit being brought in Jasper county by the present defendants against the present plaintiffs, in which the Kansas millers recovered a judgment for about $1,000. The answer here alleges that in the last named action the present plaintiffs interposed a counterclaim for the identical damages now sued for, and that such claim had therefore become *res adjudicata*. The pleadings however of that case were not introduced in evidence and hence the matter is not properly and fully before us.

At the close of plaintiffs' evidence the court instructed the jury to return a verdict for defendants, which was done, and

from a judgment in accordance therewith plaintiffs have appealed.

I. In our opinion the trial court was right in directing a verdict for defendants. The evidence for plaintiffs clearly and without substantial contradiction, shows that whatever claim they may have had against the defendants for furnishing inferior flour prior to December 18, 1896, was compromised and settled by the agreement of that date. The testimony of plaintiff Marshall establishes this. How then can the plaintiffs hope to go back of that settlement and recover on a claim then and there merged into another contract which has been performed? As well said by a learned court: "To prevent litigation the law favors and upholds the settlement of differences between the parties; and when men deliberately meet together and go over the entire subject-matter of a contract, make what purports to be a final settlement of that contract, and pay and receive the money found due, or give and receive a written obligation in lieu of the money, the law considers that they mean something by so doing, and that what they mean is that every element entering into the contract, which might have been there settled, was settled, and that the settlement was intended as a finality. An attempt to reopen such a settlement and litigate antecedent matters which ought to have been, and might have been, embraced in it, is unjust, vexatious, productive of fraud and perjury, and in every way contrary to sound policy." Pickel v. St. Louis Chamber of Commerce, 10 Mo. App. 191.

It is true that the parties in the case at bar did not reduce their contract of settlement to writing, but that is not material. It is sufficient that concerning the flour dealings had during the last months of 1896 they had a controversy; that they met, as one of the plaintiffs testified, "to adjust this matter of inferior flour," and that after much deliberation they came to an understanding and agreement, whereby these plaintiffs were to retain a portion of the flour, but that a much larger

portion was to be taken back by defendants, they delivering to plaintiffs a like amount of better flour instead; and that this flour so taken in exchange by defendants, was to be stored, re-sacked and shipped to other markets to be sold on defendants' account; that plaintiffs were to attend to these matters for defendants, and when the work was accomplished defendants were to pay plaintiffs all charges for storage, insurance, re-sacking, etc.—all of which was done and performed as agreed.

II.   It is erroneous to contend that the contract or agreement made in settlement was unsupported by any valid consideration, and therefore void.   The existence of a *bona fide* controversy as to the facts, the mutual concessions extended by one to the other in compromise and to thereby avoid litigation, furnished a sufficient consideration for the new agreement.   Viewed even as an accord and satisfaction the arrangement of December, 1896, became binding and effective because the accord was executed.   So, too, is plaintiffs' counsel in error in the contention that defendants, in the matter of compromise, did nothing more, or agreed to nothing more than they were by law compelled to do.   In this connection it is said that, in taking back the flour defendants were merely rescinding the contract of sale, and this the law compelled them to do.   The conclusion then of that course of reasoning is that the rescinding the sale and taking back the imperfect flour could furnish no consideration for plaintiffs' release of a then existing cause of action.   Counsel however overlook the further arrangement that plaintiffs were to take charge of, store, re-sack and ship the property to such places as defendants might thereafter direct.   It was then more than a mere rescission of a contract of sale.   These mutual acts, done and to be done by the parties respectively, supply a consideration for the obligations assumed and undertaken by both parties.

III.   Viewing however the compromise or settlement of December, 1896, and the taking back of the inferior flour, as a

mere rescission of the prior contracts of sale, and even then plaintiffs have no case. For the contract being rescinded there was left nothing upon which to base an action. By such rescission the former contractual relations between the parties had terminated and a new one had taken its place. And if plaintiffs had cause to complain of anything in the future, it was because of defendants' violation of the terms of the new or substituted agreement, and upon that alone could they sue.

The court below ruled correctly and its judgment must be affirmed. All concur.