PARKER-WASHINGTON COMPANY et al., Appellants, v. JAMES R. DENNISON.

In Banc, March 1, 1916.

1. LIMITATION: Written Promise to Pay. In order to bring an "action upon any writing . . . for the payment of money or property" it must appear in the statement of the cause of

action that the money sued for is promised to be paid by the language of the writing. If such promise arises only upon proof of extrinsic facts it is barred by the five-year Statute of Limitations.

2. ———: ———: ———: **Bad Faith on Part of Promisor.** The plaintiff being the owner of asphalt used in paving streets in a certain city, and of a plant used in the preparation of asphalt for paving purposes, located in said city, entered into a written contract with defendant whereby defendant agreed to pay plaintiff (1) for the use of said plant, five cents per square yard for all asphalt paving laid under the contract to the extent of forty thousand square yards, and (2) for said asphalt, one-half the amount received for any pavement done by defendant, after deducting all expenses. The defendant was to make bids in good faith to obtain paving contracts from the city. The petition alleged that defendant made no effort in good faith to obtain any such paving contracts, and when he had obtained some such contracts did not perform them and never intended to perform, and never shipped any of the asphalt which had been tendered according to contract, and held the plant for a long time; and that the gain which would have accrued to plaintiff by the payment of said sum of five cents per square yard for all asphalt agreed to be laid by defendant was two thousand dollars, and one half the profits agreed to be paid and delivered to plaintiff was twenty thousand dollars, for which amounts judgment was asked. The suit was not brought within five years. *Held*, that the contract contained a promise to pay money only on condition that the pavement was laid, and the petition on its face alleges that no paving was laid, and therefore it does not state a promise to pay arising out of the words used in the written contract, but stated only a cause of action upon an implied promise arising in law out of the alleged torts of defendants: that such cause of action is not within the statute and was barred in five years.

*Held*, by WOODSON, C. J., dissenting, that all written contracts calling for things to be done in the future are conditional, and whether they have been performed or not must of necessity be shown by parol testimony; that the contract in suit contained a definite promise in writing to pay two separate sums of money upon its performance; that defendant did not relieve himself from his promise to pay those sums by fraudulently refusing to perform; and that the promise to pay is found in the contract itself, and no evidence *aliunde* is required to show a promise to pay, and hence the five-year Statute of Limitations does not apply.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

AFFIRMED.

*Ball & Ryland* for appellants.

The action falls within Sec. 1888, R. S. 1909, providing what actions may be brought within ten years, and falls within the first paragraph thereof, ''an action upon any writing, whether sealed or unsealed, for the payment of money or property.'' Miner & Frees v. Howard, 93 Mo. App. 569; Shinn v. Wooderson, 95 Mo. App. 6; Howe v. Mittelberg, 96 Mo. App. 490; Mathis v. Knapp, 45 Mo. 48; Bridges v. Stephens, 132 Mo. 549; Carr v. Thompson, 67 Mo. 476; Curtis v. Sexton, 201 Mo. 217; Ball v. Cotton Press Co., 141 Mo. 26; Knisely v. Leathe, 256 Mo. 341.

*Scarritt, Scarritt, Jones & Miller* for respondent.

(1) The sole question presented for determination upon this appeal is whether the five or ten-year Statute of Limitations applies to the pending action. The petition was demurred to on the ground that the action was barred within five years after it accrued and this appeal is from the order sustaining the demurrer. (2) If the action is one for the recovery of money or property which the writing pleaded and relied upon, shows upon its face to be due or transferable to the plaintiffs, either expressly or by implication arising from the face of the instrument sued on, although evidence *dehors* the writing sued on may be necessary to discover the amount of the debt, then that action may be commenced within ten years from the time it accrued; but if the cause of action sought to be enforced does not fall within that category, the five-year statute applies to it. Carr v. Thompson, 67 Mo. 472; Menefee v. Arnold, 51 Mo. 536. (3) The

nature of the action as well as the nature of the writing relied upon are both consequential in determining whether the five-year or ten-year period of limitation applies. The promise sued on, to pay money or transfer property, must be in writing if the ten-year and not the five-year period is to be applied; and furthermore, the written promise sued on must be one to pay money or to transfer property in order that the ten-year period and not the five-year period shall apply. Bridges v. Stephens, 132 Mo. 524; Kauz v. Great Council, 13 Mo. App. 341; State ex. rel. v. Brown, 208 Mo. 619. (4) Nowhere in the contract now at bar did defendants' promise to pay plaintiffs any damages for non-performance of the contract, nor promise to pay them anything under the circumstances expressly shown to exist by the allegations of the petition itself; nor does the petition charge, or contract show, that defendant promised in writing to pay plaintiffs any damages or any sum upon any contingency that is alleged to have existed. This action therefore, comes within section 1889. Gas Light Co. v. St. Louis, 11 Mo. App. 65, 84 Mo. 202; Brady v. St. Joseph, 84 Mo. App. 399; Ash v. Independence, 103 Mo. App. 299; Thomas v. Pacific Beach Co., 115 Cal. 136.

## OPINION.

BOND, J.—This is an appeal by plaintiff from a judgment of the trial court sustaining a demurrer to defendants' third amended petition, on the ground that the cause of action therein alleged had accrued more than five years before the bringing of this suit. Plaintiff declined to plead further. Its suit was dismissed, from which judgment its appeal was duly taken to this court, since the amount in dispute exceeds the pecuniary limit of the jurisdiction of the Kansas City Court of Appeals.

This case turn on the question, whether the action is upon a writing for the payment of money or prop-

erty. [R. S. 1909, sec. 1888.] If that is the nature
of the action, then the demurrer interposed below
should have been overruled. The solution of this
question necessitates an interpretation of the petition
setting forth the plaintiffs' cause of action, and the
contract exhibited therewith. The substance of the
petition is, that plaintiffs and defendants entered into
a written contract, on the 9th day of May, 1898, where-
in defendants agreed to, and did, purchase sufficient
Trinidad Lake asphalt to construct forty thousand
square yards of asphalt pavement. The price paid
being the cost to plaintiffs on the date of payment
when delivery of the asphalt should be made where it
was located and which was thereafter to be shipped
to Kansas City, where it was to be used by defendants
in laying pavements in said city, after proper prep-
aration at an asphalt plant owned by plaintiffs in
Kansas City, which it was agreed, should be put in
the possession and control of the defendants up to
September 15, 1898; and in case defendants had not
then obtained contracts for the laying of forty thou-
sand square yards of pavement, then the said plant
was to remain in his possession for such time as neces-
sary, up to November 15, 1898, or later, if such
paving contracts had been obtained, but not fully per-
formed at that date. It was further provided that de-
fendants should give their time to carrying out the
paving contracts and engage in no other business dur-
ing the existence of said agreement, which should be
ended whenever forty thousand square yards of
asphalt pavement had been laid by defendants; that
they should bid on all such contracts when proposed
to be let, until they were awarded forty thousand
square yards of such paving. The contract between
the parties also restricted the plaintiffs from bidding
against defendants without their consent up to No-
vember 15, 1898, unless defendants had sooner gotten
contracts for forty thousand square yards of asphalt

paving. It further provided, that defendants should pay plaintiffs five cents per square yard for all asphalt paving *laid* pursuant to said contract, irrespective of any profit or loss in the matter, and that this payment should not be charged as an item of expense; that upon the completion of the work, the total price received (cash, bonds and special tax bills) should be divided equally, after deducting the actual cost and expense of the work, between plaintiffs and defendants; but in the event of loss, the whole burden thereof should be borne by defendants.

The petition then alleges that although plaintiffs were ready and offered to deliver said asphalt, defendants did not promptly accept and pay for the same, but only did so after the lapse of more than a year, and then failed to transport it to Kansas City and made no bids in good faith to obtain the laying of paving contracts and made no effort to get the confirmation of such contracts as were awarded to them by Kansas City, and never intended to perform any of the contracts which were awarded to them, or for which they submitted bids. The petition concludes, to-wit:

"Plaintiffs state that, while certain of public contracts for street paving were let to the defendants by Kansas City, Missouri, subsequent to the making of the aforesaid contract, said defendants never performed any of said contracts, and never intended or attempted to obtain and perform any contracts for the laying of asphalt pavements in said city; that defendants never shipped any of the asphalt, bought and delivered to them as aforesaid, to Kansas City; that defendants never laid a single yard of asphalt pavement in Kansas City under said contract.

"That had defendants shipped said asphalt to Kansas City as agreed, and had they endeavored to obtain contracts for paving as agreed, they could, and would have had awarded to them and confirmed during

the time mentioned and stated in said contract sufficient paving contracts to have laid street pavement to the amount of 100,000 square yards with the asphalt purchased of the plaintiffs, and the failure of defendants so to keep and perform their contract, and to obtain awards and confirmations of contracts, as aforesaid, was solely due to their own neglect, bad faith and default as aforesaid.

."That defendants agreed to keep a complete set of books showing the cost of all material and labor used in and about the carrying out of said contract, but said defendants failed to keep any such account.

"Plaintiffs state that the defendants, under the contract aforesaid, held and controlled for more than a year the plant of the plaintiff, The Parker-Washington Company; that the defendants, as stated, never performed any part of said contract; that the plaintiffs at all times kept and performed their part of said agreement; that finally, and prior to the institution of this suit, the defendants repudiated said agreement and refused to do and perform the same.

"That the gain to plaintiffs, which would have accrued to them by the payment of said sum of five cents per square yard for all asphalt agreed to be laid by defendants under said contract was two thousand dollars, and the value of one-half of the profits in cash and tax bills, agreed to be paid and delivered to plaintiffs as aforesaid, was the sum of twenty thousand dollars.

"Wherefore, plaintiffs pray judgment against the defendants for said sum of twenty-two thousand dollars, with interest from the date of filing this suit at the rate of six per cent per annum."

II.   There are two causes of action alleged in the petition: The one for damages caused to plaintiffs by the alleged fraudulent failure of defendants to procure and perform contracts for street paving, and

thereafter to pay to plaintiffs five cents per square yard for forty thousand square yards after that much street paving had been laid. Plaintiffs allege that these omissions prevented a "gain" to them of $2000. The other, for damages in the estimated sum of $20,000 as one-half of what would have been the earnings, if about one thousand tons of asphalt, sold to defendants by plaintiffs, had been properly prepared and laid in the form of street pavements under contracts let to defendants by Kansas City, which defendants fraudulently failed to obtain.

In order to bring an "action upon any writing . . . for the payment of money or property" (R. S. 1909, sec. 1888), it must appear in the statement of the cause of action, that the money or property sued for is *promised* to be paid or given by the language of the writing, and that such promise does not arise only upon proof of extrinsic facts. That nothing else meets the requirements of the statute, has been uniformly held whenever it has been under review. [Curtis v. Sexton, 201 Mo. l. c. 230; Menefee v. Arnold, 51 Mo. 536; Carr v. Thompson, 67 Mo. l. c. 476; Bridges v. Stephens, 132 Mo. l. c. 549 (separate opinion of BARCLAY, J.); Knisely v. Leathe, 256 Mo. l. c. 377.] Does the "promise sued on" in the present action, arise from the *words* of the written contract whose stipulations are recited in the petition? In support of that position, the learned counsel for appellant cites the following paragraphs from their contract with defendants:

"Said second parties shall pay said first parties five cents per square yard for all asphalt paving laid under this contract, said sum being in payment for the use of said plant, and shall be paid by second parties without regard to either profit or loss in the laying of any pavement, and in no event shall be charged as an item of expense.

"Upon the completion of any paving contract the

actual cost and expenses shall be ascertained by said parties, and such amount shall be deducted from the price received in cash, bonds or tax bills at their face, and the balance of such cash, bonds or tax bills shall be divided equally between the parties hereto, but in the event of loss upon any contract such loss shall be borne by said second parties.''

These clauses of the contract show on their face and by express terms, that the only promises to pay any money were: First, a promise to pay five cents per square yard for all asphalt paving *laid* under this contract; and second, a promise to pay one-half of the profits of the paving work after its *completion.* The petition states no asphalt was laid; no paving work was done and no price received for any such work in cash, bonds or tax bills, by defendants. It is clear, therefore, that neither of the conditional promises recited in the two above clauses, ever became absolute obligations on the part of the defendants, for no promise based upon a condition, can be enforced as such, until the contingency upon which it depends has happened. The fact that defendants tortiously prevented the happening of the contingency upon which their contractual obligations would have arisen, cannot be held to make a contract for them contrary to the terms in which their contract was expressed in the written agreement. Such wrongful conduct would constitute a legal basis for an implied assumpsit on their part to pay the damages caused thereby, but it could not alter the terms of the *conditional promise to pay,* as used in the written contract.

The petition alleges bad faith of the defendants in failing to procure lettings of paving contracts, thereby disabling them from performing the work, and thereby disabling plaintiff from enforcing the promise to pay five cents per square yard for forty thousands square yards of asphalt which had been

laid in the construction of a pavement, and thereby preventing plaintiffs from enforcing the general promise to pay to them one-half of the net profits of the performance of all completed paving contracts. These allegations of the petition would entitle the plaintiffs to recover damages for the non-performance and breach by defendants of the terms of their written contract. Such a recovery is justified on elementary principles applicable to redress for breaches of contract. But they do not state a cause of action on a written contract to pay money upon certain conditions which never happened. Their whole legal intendment is to set forth a cause of action for damages for a tortious breach of a contract to do certain things, for the doing of which defendants promised to pay money or property to plaintiffs.

Under the contract referred to in the petition, if the defendants had *laid* the pavement, or if defendants had obtained the laying of paving work from Kansas City, and had performed such work and reaped a profit therefrom, and had failed to pay the specific or general sum agreed by them to be paid on said contingencies, then plaintiffs could have sued defendants on the promises to pay contained in their contract, and could have recovered in that action, whatever amount the evidence showed was due. For in that event, the promises to pay made by defendants, would have become consummate by the happening of the condition upon which they were made, and such promises could have been established by the intrinsic evidence of the language of the contract between parties, and would have been a proper foundation for a suit, and it would not have been necessary (as it was in this case), to go outside of the writings and show by evidence *aliunde,* certain tortious acts on the part of defendants as a legal basis of an implied assumpsit to pay the damages thereby caused to plaintiffs.

In the case at bar, the action of plaintiffs is not

based upon the promise to pay five cents per square yard on all the asphalt laid by defendants, nor one-half of the net profits of such work when completed. For if the action had been predicated upon the simple averment of such promises, coupled with the further averment that no asphalt pavement had ever been laid, and no paving business had ever been carried on, then the petition would have been subject to a general demurrer, for the reason, that it showed on its face two *conditional* promises, which had never ripened into legal obligations. To avoid that predicament, it was necessary for the pleader to allege some other ground of liability than the two conditional promises made in the written contract. And this was done in effect, when it was alleged in the petition that by reason of the torts, frauds and negligences of defendants, the contract made by them, and the promises to pay therein expressed, became unenforceable. For upon those allegations the law would imply a promise on the part of the tortfeasor to pay the damages caused by his wrongdoing. Hence, it is the implied assumpsit created by law upon the wrongful conduct of defendants in breaking the terms of their written agreement, which is the sole basis for the maintenance of the present action, which is therefore one limited by the Statute of Limitation of five years. [R. S. 1909, section 1889.]

This distinction between a suit for the enforcement of a conditional written promise to pay money or property, and a suit for damages caused by tortious failure to perform the conditions upon which such promises are made to depend by the terms of the instrument, necessarily arises from a consideration of the language employed in entering into a contract of the kind referred to in the petition. It is also fully recognized in the learned opinion of GRAVES, J., Knisely v. Leathe, supra, l. c. 368, in contrasting

267 Mo. 14

the positions taken by the parties to that case, one of which was that the suit then brought was not on the contract "but was one for damages of which the written contract might be purely evidential."

That is the distinction which justifies the action of the trial court in sustaining a demurrer to the petition in this case. It was not, and could not be, under the terms of the contract referred to, a suit upon a written promise to pay money or property, but was an action upon an implied promise imputed to defendants by the law to answer in damages for their tortious breach of the stipulations upon which the promises in the contract were conditioned.

The judgment of the lower court is correct, and is affirmed.

PER CURIAM.—The foregoing opinion of *Bond, J.,* in Division is adopted as the opinion of the Court in Banc. All concur except *Woodson, C. J.,* who dissents in opinion filed; *Revelle, J.,* concurs in separate opinion in which *Graves* and *Blair, JJ.,* concur.

REVELLE, J. (concurring).—I fully concur in the excellent opinion of our learned brother Bond, and my only reason for attempting to add anything thereto is the fact that the case of Knisely v. Leathe, 256 Mo. 341, is strongly urged as authority for a contrary view.

In the briefs and argument of appellant, as well as in the dissenting opinion of our learned Chief Justice Woodson, this is used as "a deadly parallel." In my opinion there is such a difference between that and the instant case as to not only distinguish them, but to make the Knisely case, supra, if adhered to, an impassable barrier to plaintiff's recovery. In the Knisely case *a promise to pay* a specified sum became *absolute* when the plaintiff produced a purchaser that defendant would accept. The terms of the contract that such purchaser should be *able* to buy were purely

preliminary and all complied with and terminated when the defendant actually *accepted* him as a *suitable* and *able* purchaser; and in that case it was shown that the defendant, in point of fact, did accept the purchaser and made a contract of sale; and when he did this he merged in that contract of sale an unconditional promise to pay plaintiff a designated amount. In that case, in order to make the *promise* absolute and unconditional, it was necessary to show *only* defendant's acceptance of the purchaser, and in law that required nothing more in the nature of parole evidence than is required when recovering upon a promissory note, namely: parole proof, when required, of the execution of the note. As is said in the Knisely case (l. c. 375-6): "When Leathe signed this contract with Wolcott [Wolcott was the purchaser with whom Leathe entered into the contract of sale] . . . his liability to Knisely, the procuring agent, became *fixed*, unless such liability was defeated by some express agreement to the contrary." To make the Knisely case authority for appellant's contention, it was necessary for it to allege and prove that paving contracts requiring the materials mentioned in the contract sued upon were actually made, and not merely that defendants might have made them had they, in good faith, complied with their agreement.

There is no doubt in my mind that defendant breached its contract, and that plaintiff was entitled to recover *damages* therefor had it pursued its timely and authorized remedy; and in that action the contract here would have been evidentiary of the damages, but we cannot change the law when the law-making authority has lawfully written it. The statements of the court in the Knisely case, as in all others, must be read in relation to the particular question to which they are being applied. Every declaration of the court in that case that has been seized upon as authority for appellant's contention here is found in

a discussion of a purely incidental and subsequent matter. The contract in that case provided that the money which defendant had promised to pay plaintiff should be paid from the purchase price received from the sale of the property. The evidence discloses that the property was, in point of both law and fact, *sold,* but that, for some reason, the defendant refused to execute proper deeds to the purchaser, and, for this reason, the purchaser, of course, refused to pay the money out of which plaintiff's commission was to be paid. The court merely held that as the promise to pay had become unconditional, and as the liability of the defendant had become fixed, he could not, through his breaches and derelictions, unlawfully refuse to receive the fund from which the commission should be paid. As heretofore stated, the court's statements in that connection do not go to the character of the written instrument, but merely to the derelictions of one of the parties after the liability had become firmly fixed. The language of the Knisely case urged here, it should be noted, was used with reference to another contract, and not with reference to the contract sued upon in that case. The breach of that other contract was shown for the sole purpose of showing when the money sued for under the contract in suit was in fact due. When the Knisely case is read in view of the fact that two contracts (one in suit and one not in suit) were being discussed, it will be clearly seen that the Knisely case is not authority here.

Unless the action in this case sounds in tort, and is really one for a breach of contract, the distinction between an action for damages, because of a breach of contract, and an action on the contract itself, is clearly destroyed. The Legislature having made the distinction we can but observe it.

*Graves* and *Blair, JJ.,* concur.

WOODSON, C. J. (dissenting)—I dissent from the majority opinion in this case for the reason that in my judgment the suit is bottomed upon a written promise to pay money, and not to recover damages for a breach of contract or for fraud and deception.

The error counsel for defendant have fallen into, as I view the record, is partially caused by not differentiating between a suit brought by the obligee, payee or vendee, based upon a written contract made by the obligor, payor, vendor, whereby he promises to pay to the former money or property, and a suit brought by the former against the latter for damages for a breach of a contract or for fraud or deception. The distinction between the two is broad and deep, and the rights and remedies of the respective parties thereto are equally different, as will be pointed out during the course of this opinion.

The petition contains but one count, and states but one cause of action, not two, as the majority opinion holds. That cause of action is based upon the written contract attached to the petition and made a part thereof, which reads as follows:

"This Agreement, entered into this 9th day of May, 1898, by and between The Parker-Washington Company, a corporation, and David and F. P. McCormick, parties of the first part, and James R. McIlvried and James R. Dennison, parties of the second part, all of Kansas City, Missouri.

**Contract.**

"Witnesseth: That, whereas the parties of the second part propose to engage in the building of asphalt streets in Kansas City, Missouri, and desire to purchase asphalt and other materials for such purpose, and also to secure the use of an asphalt plant for the preparation of such material; and, whereas, the parties of the first part own much more than a sufficient amount of Trinidad Lake asphalt to lay forty thousand square yards of asphalt surface, some of which is in Kansas. City, Missouri, and some of

which is located in the State of New York, and also
own a modern asphalt plant, located in Kansas City,
Missouri, with certain tools and appliances used in
and about the preparation of the material used in the
laying and construction of the asphalt portion of street
work.

"Now, therefore, in view of the promises, it is
hereby agreed by and between said parties as fol-
lows, that is to say:

"Said second parties hereby purchase from the
first parties, and the first parties hereby sell to the
second parties, a sufficient amount of Trinidad Lake
asphalt to lay forty thousand square yards of asphalt
paving, according to plans and specifications, in Kan-
sas City, Missouri, and said second parties also agree
to purchase such other asphalt as may be legally used
in the laying of said 40,000 square yards of pavements
under this contract, provided that such asphalt other
than the Trinidal Lake asphalt shall be furnished for
cash at the market price, at such times as it shall be
called for by said second parties, provided no such
asphalt shall be used without consent of the board of
public works.

"Said second parties shall pay for the Trinidad
Lake asphalt the cost price to said parties, which
shall include freight, handling, insurance enroute, in-
terest, etc., to date of payment, which payments shall
be made upon delivery of the asphalt where located,
and satisfactory evidence furnished of the genuine-
ness thereof, said first parties to give at least five
days' notice before making any delivery, and such
asphalt shall be shipped to Kansas City, Missouri, by
said second parties, upon such payments and delivery,
and no expense for the extra handling for the purpose
of storing said asphalt at Kansas City, Missouri, shall
be charged to the business.

"All asphalt sold to said second parties by first
parties in pursuance of this contract shall be used

by said second parties in the laying of pavements in said city, and not otherwise, and the preparation of all material for the asphalt portion of such paving shall be prepared at the asphalt plant of said first parties and for such purpose said second parties shall have the possession and control of said plant for the preparation of Trinidad Lake asphalt for Kansas City, Missouri, to September 15, 1898, and in case the contracts for the 40,000 square yards of paving have not been confirmed by the council by September 15, 1898, then said second parties shall have the possession and control of said plant for the preparation of said Trinidad Lake asphalt for such time as may be necessary, up to November 15, 1898, with the right of ingress and egress at all times, for the purposes of this contract. In case said contracts shall have been confirmed prior to November 15, 1898, but not fully executed, then said second parties shall have the necessary possession, control and use of said plant until such contracts shall have been fully executed. Said second parties to have the possession, control and use of said plant in its present condition, destruction by fire or otherwise excepted, with such employees as they may require in the preparation of the material to be used in the laying of such pavements and shall also have the use of the tools, and appliances of said first parties used in and about the laying of the asphalt portion of such pavements. The machinist and night watchmen of said first parties shall at all times be retained and shall be paid for their services, for the machinist not to exceed $3.50 per day, and for the night watchman not to exceed $1.50 per day, by said second parties, during the time said second parties shall have the use of said plant.

"Said second parties shall repair all damages to said plant, tools and appliances, sustained while in the use of said second parties, the usual wear and

tear excepted, and damages by fire and the elements also excepted.

"Said second parties shall furnish such tools and appliances as are not furnished by said first parties, which may be necessary in and about said work, and charge the cost thereof to the expense account, and at the termination of this contract all such tools and appliances, including material on hand, except Trinidad Lake asphalt, shall be divided equally between said parties.

"Said second parties agree to give such time and efforts as may be necessary in promoting the business and carrying out contracts, and also agree not to engage in any other line of asphalt work or with other parties, either directly or indirectly other than those interested in this contract during the existence of this contract, and this contract shall be deemed to have been carried out and consummated upon the completion of the forty thousand square yards of asphalt paving by the second parties as herein indicated.

"The said second parties agree to bid on all Trinidad Lake asphalt paving contracts to be let hereafter by Kansas City, Missouri, up to forty thousand square yards, until they are awarded the forty thousand square yards, and said first parties will not bid, directly or indirectly, on any Trinidad Lake asphalt paving contracts in Kansas City, Missouri, before September 15, 1898, without consent of said second parties, unless said second parties have been awarded and have confirmed the contracts for forty thousand square yards before September 15, 1898. In case said amount has not been awarded and confirmed by September 15, 1898, then said first parties will not bid before November 15, 1898, unless said amount has been awarded and confirmed prior to November 15, 1898, except by agreement with said second parties.

"It is agreed that said second parties shall receive no compensation in the way of salary for any

services which they or either of them render during
the life of this contract, and no expense shall be in-
curred by said second parties in the procuring of
contracts other than those approved by David and
F. P. McCormick.

"It is agreed that David and F. P. McCormick
shall have a voice as to the expense incurred in the
purchasing of material and in the employment of all
labor used in and about such work. It being under-
stood that all material and labor shall be purchased
and employed with the least expense consistent with
good workmanship.

"Said David and F. P. McCormick will render,
without compensation, any service that may be re-
quired by said second parties in and about the carry-
ing out of the provisions of this contract, that does
not interfere with the carrying on of the business of
the Parker-Washington Company.

"That said second parties shall keep a complete
set of books, showing the cost of all labor and material
used in and about the carrying out of this contract,
including vouchers for all moneys paid out, and show-
ing for what purpose, and such books and vouchers
shall be subject to the inspection of said David and
F. P. McCormick, at all times, and upon the comple-
tion of each paving contract, a complete statement
shall be rendered as to such work.

"Said second parties shall furnish all moneys
necessary in and about the carrying out of their part
of this contract, and no interest shall be charged upon
such moneys as an item of expense.

"Said second parties shall pay said first parties
five cents per square yard for all asphalt paving laid
under this contract, said sum being in payment for the
use of said plant and shall be paid by second parties
without regard to either profit or loss in the laying

of any pavement and in no event shall be charged as an item of expense.

"Upon the completion of any paving contract the actual cost and expenses shall be ascertained by said parties, and such amount shall be deducted from the price received in cash, bonds or tax bills at their face, and the balance of such cash, bonds or tax bills shall be divided equally between the parties hereto, but in the event of loss upon any contract such loss shall be borne by said second parties. The one-half received by said first parties is in consideration of said first parties selling said asphalt, use of tools and appliances and the services of said David and F. P. McCormick as herein required. In pursuance of this agreement, said second parties shall counsel with David and F. P. McCormick, and said second parties shall not bid less than two dollars per square yard upon any asphalt paving contract, without the concurrence of said David and F. P. McCormick.

"The entering into this contract shall in no way conflict with the business of The Parker-Washington Company, except as such business is expressly limited by the terms of this contract, and said first parties agree in carrying on their business not to hinder or delay said second parties in the conduct or carrying out of their business under the terms of this agreement and this agreement shall never be construed as a partnership between said parties.

"It is further agreed by and between David and F. P. McCormick and said second parties, that said first parties will sell, if requested by said second parties, certain of the stock of said first parties, and will cause to be issued to said second parties, unissued stock of said first parties, to an amount, including such stock as said second parties shall purchase, equal to the stock held by other parties in said corporation. Said second parties shall pay par value for all stock issued by first parties, provided they elect to take

such stock, and shall pay for such stock as they may purchase which has already been issued, such price as shall be agreed upon not to exceed one-twelfth of the amount of stock issued, to the end that said second parties shall hold one-half of the stock issued by said company at the time they become stockholders in said company.

"In case the said second parties take the stock in said company as herein indicated, then this contract shall be assumed by the Parker-Washington Company as of this date, and it shall bear all expenses and receive all profits arising out of this contract; and in case said second parties do not take the stock mentioned herein before the completion of this contract, then the net earnings of said first parties from the date hereof shall not be considered an asset of the Parker-Washington Company, but shall inure to the benefit of the stockholders of said company.

"Said first parties do not intend that this offer for the sale of stock shall be an option, but in case first parties desire to make any other arrangement, it shall give said second parties fifteen days' notice of such intention, and said second parties shall have the fifteen days within which to take said stock under this agreement; and in case said second parties do not take said stock under this agreement within the fifteen days, then said first parties shall be free to make any arrangement they deem wise as to the sale of stock or the enlargement of their business, or the termination of this offer.

"The parties of the second part may desire to form a corporation in conjunction with at least one other person for the sole purpose of carrying out the requirements of this contract, and in case this is done, the second parties have the right to assign their interest in this contract to such corporation, and thereupon this contract shall bind the said corporation. The said corporation shall have all of the rights

and be substituted to all of the liabilities of the second parties as fully and with the same effect as though the name of said corporation had been stated in this contract as the party of the second part, and such corporation, if organized, shall be dissolved upon the completion of this contract, but said second parties shall guarantee the payment for the asphalt sold them as herein set forth, and also the turning over to the first parties, the profits for all work as herein mentioned and the five cents per square yard for all pavements laid for use of plant.

"Witness the hands of said parties to duplicates hereof the day and year first above written."

(Then follow the signatures and attestation.)

The legal effect of this contract was pleaded paragraph by paragraph, nothing more nor nothing less, and wound up with a prayer for a judgment for the $2000, for rent due for the use of the shop and tools, etc., and $20,000, mentioned in the petition, for its estimated share of the profits it would have received, had the defendant performed his part of the contract, which he fraudulently refused to do.

To the petition, the defendant filed a demurrer which, with formal parts omitted, was as follows:

"1.    That plaintiffs' alleged cause of action is not an action upon any writing for the payment of money or property, and that the said action was not commenced within five years after said alleged cause of action accrued, and that plaintiffs' alleged cause of action became and was barred by the statute of this State within five years after the said alleged cause of action accrued, and was barred long prior to the institution of this suit.

**Demurrer.**

"2.    That it appears from the face of the said third amended petition that plaintiffs' alleged cause of action accrued on or about November 16, 1898, and that the period within which such an action may be

commenced under the statutes of Missouri expired five years after the alleged cause of action accrued, to-wit, on or about November 16, 1903, and that this suit was not commenced until July 5, 1905.''

This demurrer was sustained; and the question is, was that proper in this case?

Before discussing the character of the written contract sued on and the liability of the defendant thereon, I wish to call attention, in passing, to the fact that my learned associate in writing the majority opinion, misconceives the character of this suit, for in Paragraph Two thereof, it is stated: ''There are two causes of action alleged in the petition: The one for damages caused to plaintiff by the alleged fraudulent failure of defendants to procure and perform contracts for street paving, and thereafter to pay to plaintiffs five cents per square yard for forty thousand yards after that much street paving had been laid. Plaintiffs allege that these omissions prevented 'a gain' to them of $2000. The other for damages in the estimated sum of $20,000, as one-half of what would have been the earnings, if about one thousand tons of asphalt, sold to defendants by plaintiffs, had been properly prepared and laid in the form of street pavements under contracts let to defendants by Kansas City, which defendants fraudulently failed to obtain.''

As previously stated, and as appears from the face of the petition, there is but one cause of action stated therein, and not two, as stated in the majority opinion; nor was the suit brought to recover damages from the defendant for a fraudulent breach of contract, as stated in that opinion. But the suit was brought, as appears from the petition and the contract sued on, for the *recovery of money conditionally* promised in writing, to be paid by the defendant to the plaintiff for the use of the shop and tools mentioned therein, and for one-half of the estimated prof-

*Causes of Action.*

its thereon promised to be paid, had the defendant performed the terms and conditions of said contract, as he agreed to do.

The fraud was not pleaded as the basis of the suit, but for the purpose of showing the fraudulent **Fraud.** breach of the promise, which would prevent the defendant from shielding his liability behind the conditions of the contract, and which, if they had not been performed by him, on account of inability, after exercising in good faith all proper efforts on his part, would have excused his non-performance thereof, and thereby have absolved him from all liability upon his conditional promise to pay money. But, if upon the other hand, as the petition shows to be true, the non-performance of the conditions was the intentional design of the defendant, which had he performed, would have made his promise absolute, then the law will not permit him to rely upon his own wrong, and say he was not liable to pay the money promised, because the conditions stated in the contract had not been performed. [Knisely v. Leathe, 256 Mo. 341.]

I. Returning to the petition and contract sued on: By reading the contract sued on in this case, it will be seen that it either contains in its **Written Contracts.** own terms or provides in express terms that books and accounts shall be kept by the defendant, showing each and every item of cost and expense entering into the construction of the 40,000 yards of asphalt pavement mentioned therein; and this court will take judicial notice of the fact that under the Charter of Kansas City all such work must be ordered by ordinance duly enacted, and that the contracts, plans and specifications therefor, must be in writing.

So, if we consider the terms of the contract, with the records that it provided should be kept by the de-

fendant, in connection with the charter provisions of
Kansas City and the ordinances and contracts men-
tioned, every element of the contract between the par-
ties to its smallest detail, would have been in writing;
and the default of the defendant in the non-perform-
ance of his part of the written contract sued on, pre-
vented the entire transactions from being in writing,
and that non-performance constitutes his whole de-
fense in this case.

That being true, then, in my opinion, the well-
known rule of law applies, which is to the effect that
when the written contract refers to books, records,
documents or other written instruments, and are
made a part thereof, and when all of them are read
together, they embrace the entire contract, then, in
legal effect, it is the same for all purposes as though
said books, records, etc., had been included in the con-
tract proper. But it may be suggested that said
ordinances, contracts, books and records, etc., were
not in existence at the time the contract was executed,
or at the date this suit was instituted, and, therefore,
that rule is not applicable to this case. It is true they
were not in existence at that time, and in the very
nature of the case they could not have been in exist-
ence at the time of the execution of the contract sued
on; they were matters that had to be performed after
its execution, as a part of its performance. But there
is a valid answer to that suggestion in my opinion.

In answer to that suggestion: That suggestion,
in my opinion, is without merit, for the reason that the
contract upon its face shows that they were to be
made by the defendant and had he done so, then every
element of the contract, including its performance,
would have been in writing at the date of the institu-
tion of this suit; and had they been made by the de-
fendant—showing the matters and things the contract
provided they should contain—then I apprehend no
lawyer of sound judgment would, for a moment, con-

tend that the entire contract was not in writing, within the meaning of the ten-year Statute of Limitations. That must be true, for the reason that the acts of performance of a contract, cannot, in the very nature of the case, be included in the contract itself, nor does the Statute of Limitations require such an impossibility.

If that proposition is sound, and, in my opinion, it is, then, the fact that said books and accounts were not made and kept by the defendant, is unavailing to him, for the reason that neither law nor equity will permit him, or any other person, to take advantage of his own wrong, positive fraud and deception, knowingly and deliberately perpetrated upon the plaintiff, for the purpose of damaging and injuring it, if not to destroy its business.

II. In the foregoing observations I have, for argument's sake, assumed that all of the terms of the contract sued on were not embraced

**Performance of Written Contracts.** within the written contract between the parties, which as I understand the majority opinion in effect holds; and, therefore, it was necessary to piece out the written contract in order to show the entire contract, which fact brought the case within the five-year Statute of Limitations.

But as a matter of fact, I deny that such was the case. What part of the contract sued on was not in writing, as indicated by the writing sued on, and where are the allegations in the petition so stating or even intimating anything of that kind? The answer is, where? They do not exist. If they do, neither the court nor counsel have pointed a finger thereto, nor have I been able to find any such provision in the written contract or statement in the petition after carefully reading them a number of times. But the majority opinion does hold that it was necessary for

the plaintiff to resort to parol testimony in order to make out its case, and that said fact destroyed the written contract as one for payment of money or property, within the meaning of the ten-year Statute of Limitations, and brings it within the purview of the five-year statute. For that reason, as previously stated, the majority opinion must in effect hold that all of the terms of the contract made between the plaintiff and the defendant were not reduced to writing, and embraced in the written contract sued on; for otherwise, such parol testimony would have been wholly immaterial, irrelevant and incompetent—not tending to prove any issue whatever in the case.

I adhere to that time-honored rule of law which is to the effect that whenever a contract has been reduced to writing and signed by the parties, it cannot thereafter be varied, added to, subtracted from or altered by parol testimony, except where it appears from the face of the writing itself that all of the terms of the contract were not embraced therein; but where such fact does appear from the face of the writing, then the remainder of the contract may be shown by parol testimony, if properly pleaded, and provided, the contract is not one the Statute of Frauds requires to be in writing.

Clearly, as before stated, the writing sued on does not show upon its face that all of the terms of the contract actually entered into between the parties were not reduced to writing; and for that reason there were no parts of the contract resting in parol, which could have been pleaded or proven by parol testimony. In other words, if a written contract shows upon its face, as this one does, that all of the terms of the contract were reduced to writing, then there was no element of it resting in parol which could have been pleaded, and consequently could not have been proven by parol evidence.

267 Mo. 15

An additional observation regarding the necessity of the contract providing for the acts of its performance: As previously stated, the contract may provide what acts shall be done in its performance, and by whom they must be performed; but whether they have been performed or not, must of necessity be shown by parol testimony, for the obvious reason the performance of a contract must be subsequent to its execution.

In the case at bar, had the defendant performed his part of the contract, except as to paying plaintiff its $2000, and one-half of the profits, the only facts which the plaintiff would have been required to prove by parol evidence in order to have been entitled to a recovery, would, at most, have been that it sold and delivered to the defendant the asphalt mentioned, that it was of the kind and standard specified in the contract; that it turned over to the defendant, the shops and tools also mentioned therein; and that the accounts of the cost of the labor and materials and other items of expense which entered into the street improvements were true or false, as the case may have been, and what balance, if any, there remained in favor of the contractors; one-half of which would have belonged to the plaintiff.

This is precisely what was done in the case of Knisely v. Leathe, 256 Mo. 341.

In that case the plaintiff had to show *by parol testimony,* that he had found a purchaser for the land, at the price stated, and that he was able, ready and willing to pay for the same in the manner stated in the contract. All of those matters pertained to the performance of the contract, and not to the promise to pay money or property.

The same is true in the case at bar. The matters mentioned in the majority opinion, which had to be proven by parol testimony, also pertained to the performance of the contract, and not to the promise of

the defendant to pay the sums before mentioned. The promise in both cases was contained in other provisions of the contract.

The mere fact that the breach of the contract was brought about by fraud and deception on the part of the defendant is wholly immaterial in so far as the rights of the plaintiff to sue thereon are concerned. If the contract was, at the time of its execution, a promise to pay money, which clearly it was, then no subsequent act of the defendant, fraudulent or otherwise, could change the character of that promise, or have substituted one statute for another for its government.

Certainly the defendant stands in no better position for having broken his contract through means of fraud and deception, than he would have occupied had he stood idly by without exerting an effort to perform his part thereof; and had the defendant breached the contract in the manner last suggested, there could be no shadow of doubt in my opinion but that the suit thereon would have been for a breach of a contract for the payment of money; and in that case all that the plaintiff would have been required to prove in order to have entitled him to a recovery, was that the defendant made no effort to perform the contract; that the conditions therein stated could have been performed by him by the exercise of proper efforts; the contract price for laying the pavement and the cost and expenses for laying the same.

The apparent, not real, efforts of performance of the contract made by the defendant did not relieve him from his promise to pay the plaintiff the two sums of money mentioned in the contract; nor the fact that said promise was conditioned upon his ability to procure the contracts from the city for laying the pavement relieve him, when he made no effort to procure them or to have them confirmed when procured.

The conditions of the contract in this case are very much like those in the case of Knisely v. Leathe, supra. Here the conditions are that the defendant was to use his best efforts to secure contracts from the city to do the street paving mentioned in the contract; that he should construct the pavements according to the contracts, plans and specifications, and keep true and accurate accounts of the cost and expenses thereof, and pay, first, to plaintiff, $2000, for the use of shop and tools, regardless of the profit made or loss sustained in constructing the 40,000 yards of pavement mentioned in the contract, and, second, one-half of the net profits to be realized, if any, for constructing said pavements; while in the Knisely case the conditions of sale were that the real estate agent, Knisely, should find a purchaser for the land who was able, willing and ready to purchase the same upon the terms stated in the contract, and that the agent was to receive from Mr. Leathe, landowner, for his services, the sum of $107,500, payable in four installments, "the first one of $37,941.19, and each of the three additional payments of $23,186.27 each, at such time and place as the said Leathe should receive the principal payment on said real estate, as per the contract of sale entered into by him with Charles C. Wolcott of even date herewith."

In the former case the plaintiff was to be paid the $2000 for the use of the shop and tools, and the one-half of the net profits, if any, realized out of the contracts, as soon as the defendant constructed the pavements. In the latter case, Knisely was to be paid his commission for selling the real estate by Leathe, in said four installments, out of the four installments of the purchase price of the land, as they were paid by Wolcott to him.

Knisely performed his part of the contract, but Leathe refused to sell the land to Wolcott, and, therefore, contended that Knisely was not entitled to his

commissions because they were only payable out of the installments of the purchase money as they were paid to him by Wolcott; and as the latter had never paid him any of the purchase money, Knisely was entitled to no commissions.

The court in that case said, "That is true; but it was your own wrong which prevented Wolcott from paying the purchase price, and you will not therefore be heard to say the purchase price was not earned by Knisely."

The same is true in the case at. bar; it was the wrong of the defendant which prevented the plaintiff from receiving the $2000, for the use of the shop and tools and its portion of the estimated profits it would have been entitled to had the work under the paving contracts been done by the defendant.

The following parallel columns prepared by counsel for plaintiff, will show more clearly the analogy of the two cases and the applicability of rules of law laid down in that case, to the one at bar:

*This Case.*

In this case the promises sued on are as follows:

"Said second parties shall pay said first parties five cents per square yard for all asphalt paving laid under this contract, said sum being in payment for the use of said plant and shall be paid by second parties without regard to either profit or loss in the laying of any pavement and in no event shall be charged as an item of expense.

*The Knisely Case.*

In the Knisely case the promise sued on was as follows (supra, p. 376):

" 'I hereby promise and agree to pay to' Charles H. Knisely, of St. Louis, Mo., trustee, or his order, the sum of one hundred and seven thousand five hundred dollars out of the purchase price of $850,000; the payment of said $107,500, to be made by me to said Charles H. Knisely, trustee, or his order, in four payments, the first one of $37,941.19,

"Upon the completion of any paving contract the actual cost and expenses shall be ascertained by said parties, and such amount shall be deducted from the price received in cash, bonds or tax bills at their face, and the balance of such cash, bonds or tax bills shall be divided equally between the parties hereto, but in the event of loss upon any contract such loss shall be borne by said second parties."

and each of the three additional payments of $23,-186.27 each, at such time and place as I receive the principal payment for said real estate as per contract of sale entered into by me with Charles C. Wolcott of even date herewith.' "

In this case it is said (Opinion, p. 180, *ante*):
"It (the contract) further provided that defendants should pay plaintiff five cents per square yard for all asphalt paving laid pursuant to said contract."

Again (p. 183, *ante*):
"These clauses of the contract show on their face and by express terms, that the only promises to pay any money were: First, a promise to pay five cents per square yard for all asphalt paving laid under this contract; and,

In the Knisely case (p. 368), it is said:
"It is clear that counsel for respondent were urging that plaintiff could not recover because there had been no money paid by Wolcott to Leathe [as it is here contended and held that plaintiffs cannot recover because there had been no asphalt laid]. So that, from all standpoints the character of this written instrument between Leathe and Knisely is a vital question here in view of the fact that this case must go back for trial below. Not only so,

second, a promise to pay one-half of the profits of the paving work after its completion.''

Again (p. 183):

''It is clear, therefore, that neither of the conditional promises recited in the two above clauses ever became absolute obligations on the part of the defendant, for no promise based upon a condition can be enforced as such until the contingency upon which it depends has happened . . . Such wrongful conduct [of the defendant] would constitute a legal basis for an implied assumpsit on their part to pay the damages caused thereby, but it could not alter the terms of the conditional promise to pay as used in the written contract.

but the very character of the suit is challenged and the court below, having sustained the demurrer as a whole, we must take the view here that the trial court stood with respondent upon these contentions as to the character of the suit and the character of the contract. He could not have sustained the second ground of demurrer as he did without saying that the written contract was not one 'for the payment of money or property,' or without saying that the suit was not upon the written contract.''

Again (p. 184):

''They do not state a cause of action on a written contract to pay money upon certain conditions which never happened. . . . Under the contract referred to in the petition, if the defendants

Again (p. 372):

''The petition proceeds upon the theory, and rightfully so, that if Wolcott purchased the property and a completion of that purchase by exchange of deeds and trust deeds was prevented by

had laid the pavement or if defendants had obtained the laying of paving work from Kansas City and had performed such work and reaped a profit therefrom and had failed to pay the specific general sum agreed by them to be paid on said contingencies, these plaintiffs could have sued defendants on the promises to pay contained in their contract and could have recovered in that action whatever amount the evidence showed was due.''

the act of Leathe, then the money mentioned in the Leathe-Knisely contract at once became due, and this too without reference to the payment of any money by Wolcott. In other words, that Leathe could not wilfully refuse to enforce the Wolcott contract and thereby defeat the promise to pay made in the Knisely contract. It follows that counsel for respondent are in error when they insist that the action is one sounding in damages for a breach of contract. It also follows that the circuit court was in error if it followed this bent of counsel's mind. It is further true that the court was in error when in sustaining the second ground of the demurrer that the petition stated no cause of action without the allegation that the money had been paid by Wolcott.''

Again (p. 185):

''If the action had been predicated upon the simple averment of such promises, coupled with the further averment

Again (p. 376):

''This contract, at least when coupled with the allegation that Wolcott or his assigns stood ready and willing to perform

that no asphalt pavement had ever been laid and no paving business had ever been carried on, then the petition would have been subject to a general demurrer, for the reason that it showed on its face two conditional promises which had never ripened into legal obligations."

and Leathe refused and failed to perform the Leathe-Wolcott contract, rendered Leathe liable at once for the full amount agreed to be paid in the Knisely contract, as and of the date of such refusal, this too, in a suit upon the contract."

Again (p. 377):

"The action is upon the contract, and at the very most it is only required to go outside of the contract to show that Wolcott was ready and willing to perform and Leathe refused to perform the Wolcott-Leathe contract."

The same principles of law announced in the Knisely case are controlling in this. There, in discussing what constituted a written promise to pay money or property, within the meaning of the ten-year Statute of Limitations, this court, on page 361, said:

"It makes no difference, however, whether the suit be in debt for the amount due upon a contract, or in covenant to recover unliquidated damages for its breach. Both are alike on the contract; and if the contract is 'for the payment of money or property' it fills the requirement of the provisions of the Statute of Limitations we have quoted. The following cases are more or less in point on the same question: Rey-

burn v. Casey, 29 Mo. 129; Moorman v. Sharp, 35 Mo. 283; Henoch v. Chaney, 61 Mo. 129, 133; Miner v. Howard, 93 Mo. App. 569. We have no doubt that the ten-year limitation would apply in a suit of this character brought on a similar contract in the lifetime of the party.''

I have always understood the rule to be, that if the contract contains an express agreement, or one by necessary implication, to pay money or property, then the ten-year Statute of Limitations and not the five, governs the same. This is made clear by the mere statement of the fact, that it is the *promise of the obligor which must be in writing,* not the consideration he received for entering into the same, nor *what acts he agreed therein to perform* in carrying the contract into execution.

Those matters have nothing whatever to *do with the promise made, nor its character,* except of course, in a proper case the promise might be shown to be void for a want of consideration or a failure thereof.

The contract sued on contains the following provisions or promises made by the defendant, viz.:

*''Said second parties shall pay said first parties five cents per square yard for all asphalt paving laid under this contract, said sum being in payment for the use of said plant, and shall be paid by second parties without regard to either profit or loss in the laying of any pavement, and in no event shall be charged as an item of expense.*

*''Upon the completion of any paving contract the actual cost and expenses shall be ascertained by said parties, and such amount shall be deducted from the price received in cash, bonds or tax bills at their face, and the balance of such cash, bonds or tax bills shall be divided equally between the parties hereto, but in the event of loss upon any contract such loss shall be borne by said second parties.''*

As well stated by counsel for plaintiff:

"The relief sought is:

"(1)  For the recovery of $2000, being five cents per square yard for 40,000 square yards of asphalt pavement, being the specific liquidated sum that at all events and in any event defendant, by the first of the foregoing provisions, agreed to pay; and,

"(2)  For the recovery of $20,000 for failure to pay, as promised in the second of the above provisions.

"If either or both of these express written promises to pay are promises to pay money or property, the action was well brought within the ten-year period, and the judgment of the circuit court must be reversed and plaintiffs awarded a trial."

Can there be any question but what the promise before quoted from the contract sued on, was for the payment of money—the $2000, and the one-half of the net profits of the street improvements, represented by the $20,000 mentioned? Clearly not, for the defendant never promised to pay anything else; but he did promise to pay the former sum, and one-half of the net profits to be derived from the street improvements to be constructed by him; which plaintiff estimates would have been $20,000, had the defendant complied with the other parts of the contract; and for that reason he sued for the $20,000.

In discussing a similar case the Court of Appeals in the case of Miner & Frees v. Howard, 93 Mo. App. 569, on page 572, said:

"By that instrument there arose a promise to pay for the labor and material; and it is therefore not true, as contended by defendants, that the claim for the material in controversy was barred, because more than five years allowed for actions on accounts had elapsed. . . . The fact that the sum to be paid was not ascertained when the bond was executed and therefore not named therein, does not prevent the application of the statute. [Carr v. Thompson, 67 Mo. 472; Reyburn v. Casey, 29 Mo. 129; Moorman v. Sharp, 35 Mo.

283.] Neither is it an objection to this view of the statute that the bond in suit is a collateral or indirect promise to pay money. [Martin v. Knapp, 45 Mo. 48; Rowsey v. Lynch, 61 Mo. 560.] Though indirect, the bond itself contains a promise and was a writing 'for the payment of money,' which would sustain the action within ten years."

In the case of Shinn v. Wooderson, 95 Mo. App. 6, the plaintiff made an agreement with the trustees of the church to furnish moneys for the construction, the trustees agreeing to reimburse him and to give him a lien or mortgage on the church property for such sum as they did not repay him when the improvements were completed. Shinn claimed a balance for which he had not been paid and brought suit for it after five years. The court says (p. 13):

"The rendition of the account by items will be treated merely as evidence offered, upon the part of the plaintiff, to show that in good faith he did pay out the amount he agreed with the defendants to advance. The petition sets out that he furnished that amount to the trustees upon the understanding that if he was not repaid he was to have his lien upon the lot. The amount that he was to let the trustees have was agreed upon and fixed at the sum stated. It follows, then, that his is not a suit upon an account, but a suit upon an agreement."

The court held the ten-year statute applied.

In Howe v. Mittelberg, 96 Mo. App. 490, the court says (p. 493):

"If we test the application of the Statute of Limitations, as appellant claims we should, by asking whether the contract shows on its face a promise to pay or requires evidence *aliunde* to show a promise (Carr v. Thompson, 67 Mo. 472), the cause of action falls within the ten-year limitation, because the contract carries on its face a promise to pay money."

In the Martin v. Knapp case, 45 Mo. 48, the suit was on an administrator's bond, and the five-year statute was pleaded in bar. The court pointed out in the opinion that the Statute of Limitation of 1849 was amended in the revision of 1855 by omitting the word "direct" in describing actions on written instruments for the payment of money and that the Legislature did so with the object of including in the ten-year limitation all actions founded on such instruments, whether the promised payment was to be certain or contingent. That statute has never been amended since 1855.

In Bridges v. Stephens, 132 Mo. l. c. 552, the court said:

"The result of these decisions is that if the writing in question contains enough to raise the promise (to pay money or property) sued on, the ten-year limitation applies to an action for its breach. If the obligation is clearly apparent from the writing, a breach of it may be exhibited by facts outside the writing."

In Carr v. Thompson, 67 Mo. 472, referred to in Howe v. Mittelberg, supra, Thompson's written promise was that he " 'should pay the said Carr the amount for which he may be liable as security on the bond of one J. Henry Chiles as guardian of his daughter, Sally Chiles, as soon as the same is ascertained and known —say in twelve months from this date (September 11, 1866) by note and security, with interest from this date.' " The court, on page 476, said:

"The promise to pay was in writing and, though the sum to be paid was not expressed in the writing but was by the terms thereof to be thereafter ascertained, that fact would not take it from under the operation of the ten-year statute. Were the writing of such a character that evidence *aliunde* would be required in order to show a promise to pay, the limitation of five years would apply."

In Curtis v. Sexton, 201 Mo. 217, the court says (p. 230):

"Defendant also contends that the cause of action falls within the five-year Statute of Limitations and is therefore barred. The argument is that when evidence beyond the written document must be resorted to in order to make out the case it is not an action upon 'a writing . . . for the payment of money or property' within the meaning of section 4272, Revised Statutes 1899 (which is the ten-year limitation), and several cases are cited as supporting that argument, among them Menefee v. Arnold, 51 Mo. 536; Brady & Kerby v. St. Joseph, 84 Mo. App. 399, and others. But that is a misconception of those cases; they only mean to say that where the promise or agreement to pay on which the action is based is not found in express terms or by fair implication in the writing, but the cause of action arises out of facts collateral to the instrument, it does not fall within the provision of that section of the Statute of Limitations.

"'In the case at bar there is an express agreement to pay the amounts the plaintiff paid on account of his purchase and interest thereon, the only necessity for going beyond the paper writing to make out the case is to show the performance of the contract on the part of the plaintiff and the breach on the part of the defendant. The action is founded on the written contract and falls within the ten-year section of the Statute of Limitations."

To the same effect is the case of Ball v. Cotton Press Co., 141 Mo. App. 26. That was an action to recover a dividend on stock held in the defendant company and was bottomed on a minute record of the board of directors which recited that a certain sum should " 'be paid pro rata according to the number of shares held by them [the stockholders].' " It was contended that the action was barred by the five-year Statute of Limitations. The court says (p. 42):

"In order for a writing to be a promise to pay money in the sense of the ten-year limitation section, the writing must contain words which either express a promise to pay or from which a promise may be implied. [Reyburn v. Casey, 29 Mo. 129; Carr v. Thompson, 67 Mo. 472; Howe v. Mittelberg, 96 Mo. App. 490.] What was written in the record of the meeting of the directors of the Peper Company imported a promise to pay plaintiff $1500 as his part of the dividend . . . The present action was instituted about nine years after the declaration of the dividend and is not barred."

In the supplemental opinion of Judge GRAVES, in the case of Knisely v. Leathe, supra, the point is ably and thoroughly discussed. In that case the obligation to pay the plaintiff was to pay him out of moneys thereafter to be paid to the defendant under a contract which he had with one Wolcott. The court, on page 368, said:

"He [the trial judge] could not have sustained the second ground of demurrer as he did without saying that the written contract was not one 'for the payment of money or property' or without saying that the suit was not upon a written contract, but was one for damages of which the written contract might be purely evidentiary."

Again (p. 372):

"The petition proceeds upon the theory, and rightfully so, that if Wolcott purchased the property and a completion of that purchase by exchange of deeds and trust deeds was prevented by the act of Leathe, then the money mentioned in the Leathe-Knisely contract at once became due, and this too, without reference to the payment of any money by Wolcott. In other words, that Leathe could not wilfully refuse to enforce the Wolcott contract, and thereby defeat the promise to pay made in the Knisely contract. It follows that counsel for respondent are

in error when they insist that the action is one sound-ing in damages for a breach of contract. It also fol-lows that the circuit court was in error if it followed this bent of counsel's mind. It is further true that the court was in error, when in sustaining the second ground of the demurrer, that the petition stated no cause of action without the allegation that the money had been paid by Wolcott. That one having an en-forceable contract of sale with another person, in-duced and procured by an agent, cannot defeat the agent's commission by refusing to enforce the con-tract, is well-settled law. His refusal to carry out the contract, or, in the event he himself has signed the con-tract of sale with the purchaser, his refusal afterwards to enforce such contract renders him liable for com-mission in the sum agreed upon.''

I state without fear of refutation, that the con-sensus of the authorities is to the effect just stated, and that the contract sued on is a promise to pay money, and, therefore, is governed by the ten-year Statute of Limitation.

I will now carefully review the authorities cited and relied upon by counsel for defendant in support of their contention that the five-year statute controls in this case.

The main cases cited by counsel for the defend-ant in support of his contention that this is not a suit upon a written contract or promise for the payment of money or property and therefore the action is barred by the five-year Statute of Limitations, are: Brady & Kerby v. St. Joseph, 84 Mo. App. 399; St. Louis Gas Light Co. v. St. Louis, 11 Mo. App. 55, 84 Mo. 202; Ash & Gentry v. Independence, 103 Mo. App. 299; Thomas v. Pacific Beach Co., 115 Cal. 136.

The first case mentioned is that of Brady & Kerby v. St. Joseph, 84 Mo. App. 399.

In that case defendant, a city of the second class, in proper form and legal manner awarded to plain-

tiffs' assignor a contract to grade certain streets therein according to the plans and specifications then on file in the office of the city engineer, showing among other things the grade lines of the streets to which the grading had to conform, for and in consideration of —————— dollars. The contract also provided that after the grading should be completed according to contract, the city would issue to the contractor special tax bills against the abutting property in payment of the contract price therefor; also that in conformity to the provisions of the city charter, the city should not be liable in any manner for the cost of grading said streets, but that he should collect the cost thereof through the means of said tax bills out of the abutting property and not otherwise. That after the grading had progressed to a certain stage the city, by ordinance, changed the grade lines of some of said streets, which rendered it physically impossible for the contractor to complete the grading according to the contract and plans and specifications. Some eight or nine years after the grade lines of the streets had been so changed and the grading thereby having been prevented, that suit was brought, not on the *contract for the payment of money or property* the city had promised to pay the plaintiff, because *no such promise was contained in the contract,* but for damages sustained by him because the city had wrongfully rendered it impossible for the contractor to complete the grading according to contract and plans and specifications, which, under the law, was absolutely necessary for him to do before he was entitled to the tax bills creating a lien upon the abutting property, out of which alone he had to look to collect his money for doing the work.

In all such cases the city acts more in the nature of an agent for both parties, the property owners and the contractors; ordering the improvements made for the benefit of the property which must pay the cost

thereof and issuing the special tax bills to the contractor in payment.

From the foregoing it is clearly seen that the contract mentioned was not a promise made by the city for the payment of money or property to the contractor for doing the grading, but upon the contrary, it in specific terms provided that the city should *not be liable* for the cost of the improvements, and that the contractor should look alone to the abutting property for his pay. In other words, what did the city promise the contractor to do upon his completion of the grading according to contract? To pay him money or property? No; but to issue to him special tax bills creating a lien upon the abutting property in his favor, which alone the law provided, and he by the contract agreed to accept, as full compensation for doing the work. Did the contractor complete the grading? No. Did the city issue the tax bills? No. Why? Because the work was not completed according to contract, which alone would have benefited the abutting property and legally authorized the issuance of the tax bills. What effect did the change of the grades of the streets, by the city, have upon the contract of the plaintiff for doing the grading? It impaired the obligation of a valid contract, and therefore violated the contract clauses of the State and Federal Constitutions. Then what was the suit for in that case? To recover the special damages from the city the plaintiff had sustained by reason of the breach of said contract, and not on a written promise to pay money or property.

Moreover, suppose the city had not interfered with the grading, and the plaintiff had completed the same according to contract, but the city had wrongfully refused to issue the tax bills, would the city in that case have been liable under the law and the contract for the payment of money or property? Certainly not. The only agreement the city made was to

issue the tax bills, and its failure to so do would not have metamorphosed that agreement into a contract to pay money or property and thereby have rendered it liable for the payment of money or property, instead of its duty to issue the tax bills.

In such a case, the city could have been compelled by mandamus to have issued and delivered the tax bills to the contractor. This court has so held in numerous cases.

That was an action against the city of St. Joseph, as the Court of Appeals stated in the opinion, to recover *special damages* because of its wrongful act in preventing the plaintiff from completing the grading according to the contract. Upon that performance depended the contractor's right to have the tax bills issued and delivered to him, through which alone he could have collected the contract price for the work. In other words, the abutting property to street improvements cannot be compelled to pay the cost thereof, without they have been constructed in conformity to the terms of the contract which alone adds the benefits to the property—for which it must respond. No excuse will or can be accepted for a non-compliance with the terms of the contract—not even the acts of God or man; but if the completion of the work is wrongfully prevented by the city, then it may be compelled to respond for the ensuing damages; but *the property* or property owner, never. For the reasons stated the Court of Appeals correctly held that that suit was not based upon a written promise to pay money and that the five and not the ten-year Statute of Limitations governed. Clearly that case has nothing in common with the case at bar, which was based upon a written promise to pay money; and it is equally clear that the five-year statute has no application to this case.

The second case cited by counsel is that of the St. Louis Gas. Co. v. City of St. Louis, 11 Mo. App. 55,

affirmed in 84 Mo. 202. In that case the plaintiff in 1846 made a contract with the city of St. Louis, to sell to the city its gas plant in the year 1870, upon certain conditions named therein. For years subsequent to the last-named date, the company had furnished the city with gas for illuminating purposes, for, which the latter refused to pay. Thereupon the company sued the city for the sum of $545,670.48, the price of said gas so used. The city in its answer, by way of a counterclaim, set up the terms of the contract of 1846, whereby the company agreed to sell the plant to it in the year 1870, upon certain conditions named, and that it had performed those conditions, but nevertheless, the company had refused to sell and turn over the possession of the same to the city; and that in consequence of said refusal, the city had been damaged in the sum of $3,000,000, etc.

In that case it should be observed that there was no provision in the contract on the part of the company to pay to the city said $3,000,000, or any other sum. It simply agreed to sell to the city the gas plant; and the contract contained no promise to pay the city money or property in case it refused to sell and transfer the plant. But, as before stated, the company did agree to sell the plant to the city; and in the case of City of St. Louis v. St. Louis Gas Light Co., 70 Mo. 69, the former brought suit against the latter to specifically enforce the same contract which this court held was proper, but denied the city's right to the remedy prayed, because it had waived its right to insist upon the performance of the contract of sale. It is thus seen that the city in the case reported was not again suing for the enforcement of the contract of sale, but was suing for damages for its breach in not selling the plant to it. It is therefore perfectly clear the company never in writing or otherwise agreed to pay the city $3,000,000, or any other sum of money in case it refused to make the sale; and there-

fore said contract was not a written promise to pay to
the city money or property.  The suit was for dam-
ages, the law imposes for the breach of the contract.
That is made clear by the case of City of St. Louis v.
St. Louis Gas Light Co., supra, where the city brought
suit to compel the company to sell and convey the gas
plant to it.  That suit was based upon the company's
promise to sell and convey—the only promise it made
to the city; and the city knowing that fact, brought
that suit for its specific performance.  But as before
stated, the Gas Company never agreed in writing or
otherwise, to pay to the city $3,000,000, or any other
sum, in case it should refuse to make the conveyance;
and therefore the counterclaim of the city was not and
could not have been based upon a promise of the com-
pany to pay it money.  That counterclaim was based
upon a breach of contract for the sale of the plant to
the city, and nothing more.  That case is totally for-
eign to the case at bar; and the principles of law an-
nounced therein regarding the Statute of Limitations
have no application to this case.

The next case is that of Ash & Gentry v. Inde-
pendence, 103 Mo. App. 299.

The facts of that case are very similar to those
in the case of Brady & Kerby v. St. Joseph, supra,
save in this one particular: In the former, the negli-
gence and delay of the city of Independence prevented
the contractor from completing his contract within the
time prescribed therein; and in consequence thereof
he was denied a recovery on the tax bills which were
properly issued, but not in proper time; while in the
latter case the change of grade prevented the contrac-
tor from completing the work.  The legal proposition
in both is identically the same; and the Brady case is
cited and chiefly relied upon in support of the Ash-
Independence case.

It is clear from this statement that the latter case
was not a suit upon a contract for the payment of

money or property nor a mandamus proceeding to compel the city to issue the tax bills—it had previously fulfilled that promise, the only one it had made to the contractor, but it was a suit predicated upon the negligence and delay of the city of Independence, which prevented the contractor from completing the work within the specified time. The court held, and properly so, that the five-year Statute of Limitations applied. That ruling was proper, but it has no application to the case at bar, where the suit is upon the written contract to pay money and not for the recovery of damages for its breach, as was true in all of the cases cited by counsel for defendant.

The last of said cases cited is that of Thomas v. Pacific Beach Co., 115 Cal. 136.

In that case the facts were substantially these: On December 12, 1887, the defendant entered into a written contract with the plaintiff to sell him certain lots of ground belonging to it, for the sum of $500, with interest, on deferred payments. The contract provided that the purchase price thereof should be paid in three equal installments, the first on the date of the contract, and the other two in one and two years thereafter, and that upon the payment of the deferred installments, the contract provided that the defendant should execute to the plaintiff a proper deed conveying the lots to him. That in due time the plaintiff paid the full purchase price of the lots to the defendant, and in September, 1891, he demanded from it a deed conveying the lots to him, which was by the defendant refused; and on October 7, 1893, that suit was instituted by the plaintiff to recover back from the defendant the purchase price paid by him to it for the lots. To that suit the defendant interposed the one-year Statute of Limitations of California, as a bar to the action, which is similar to our five-year statute. In opposition to that position the plaintiff contended that the suit was based upon a written contract for the pay-

ment of money, etc., and that the four-year statute of that State applied, which is similar to our ten-year statute. The court, in that case held, and properly so, in my opinion, that the one-year statute governed and that the demurrer was properly sustained.

In that case it should be borne in mind what was the real character of the contract sued on. In short, the defendant agreed to sell to the plaintiff certain lots for the sum of $500, and the plaintiff agreed to pay that sum to the defendant for the same; and nothing was said in the contract about the defendant repaying the purchase price of the lots to the plaintiff in case the former declined to execute the deed conveying the lots to him. Under that state of facts, what were the plaintiff's remedies? First: He could have brought suit on the contract for specific performance (which expressly promised to convey the lots to him). That suit could have been brought at any time within four years, for the reason that the promise was in writing and was governed by the four-year statute. And second: He could have waived his right to the specific performance of the contract and have sued for damges sustained, if any (which was not in writing) for defendant's refusal to convey the lots to him, which would not have been for the purchase price paid, with interest, but for damages sustained, which was the difference between the contract price and the value of the lots, if that exceeded the contract price, but if less than the contract price, then he could have recovered nothing, because, in that case, he would not have been damaged. In short, what was the promise the defendant made to the plaintiff in that case? To convey to him certain lots. Did the defendant promise or agree in the contract to repay to the plaintiff the $500 with interest in case the lots should not be conveyed to him according to the terms of the contract? No. It only promised to convey the lots—nothing was said regarding a repayment of the purchase price.

Upon that state of facts, the plaintiff could have, as he did, waived his right to sue for specific performance of the written contract, and have sued for damages for its breach, which could have been done in one year; or he could have sued for specific performance of the written contract, which could have been done in four years.

The four cases mentioned are the principal, if not the sole, cases relied upon to show that the five-year statute governs this case, which in my opinion, have no application to it whatever.

So it is seen that those cases have no bearing whatever upon a suit based upon a written contract, as this one is; and that the contention of counsel for defendant has no legal foundation upon which to rest.

Moreover, and independent of all that I have stated regarding the character of the contract and promises made by the defendant in this case, if the contract sued on is not a promise in writing made by the defendant to pay the plaintiff the $2000 for the use of the shop and tools mentioned and the $20,000, or so much of it as the evidence might show was due the plaintiff as the estimated share of its profits, then I feel perfectly confident in stating that it would be both a legal and physical impossibility to draw and execute such a contract as this, that is, one which promises to pay certain estimated profits upon conditions therein stated, to be performed by the promisor, and at the same time bring it within the ten-year Statute of Limitations. This must be true in the very nature of things. The performance of the terms and conditions of any and all contracts, must of necessity, as previously stated, be performed subsequent to the execution of the contract, and for that reason the acts of performance must also rest in parol, and be proven by that character of evidence. It would also be true, that such a contract could not be legally drawn and executed, whereby one person could promise to pay to

another an unliquidated sum of money to be realized out of any business enterprise, and at the same time bring the contract within the ten-year statute. This seems to me to be a novel and startling proposition; and if that is true, then it must also be true that all of the terms of such a contract cannot be reduced to writing and embraced in the same contract, but part of it must rest in parol and be proven by that treacherous class of evidence.

There is much more that might be said regarding the law and facts of this case in confirmation of the position that this is a suit based upon a written promise to pay money, and, therefore, not barred by the five-year Statute of Limitations; but I believe I have sufficiently stated the law and facts of the case to show that the majority opinion is based upon a misconception of the facts, which renders the legal propositions therein stated (which, as abstract propositions of law, are correct) inapplicable to the real facts of the case.

For the reasons stated, I dissent from the majority opinion, and am of the opinion that the judgment of the circuit court should be reversed and the cause remanded for a new trial.